Suzanne BROWN, Personal Representative of the Estate of Kevin Lee Brown, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Jose CRUZ and Ann Cruz, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

Nos. 82–3314, 82–4314.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1983.

Decided Sept. 7, 1983.

Allen T. Murphy, Jr., Portland, Or., John Cordes, Washington, D.C., for plaintiff-appellant.

John Cordes, Washington, D.C., Harold Seldon, San Francisco, Cal., for defendant-appellee.

Before KILKENNY, CHOY and CANBY, Circuit Judges.

CHOY, Circuit Judge:

The issue on this consolidated appeal is whether, under the National Flu Immunization Program of 1976 ("Swine Flu Act"), Pub.L. No. 94–380, 90 Stat. 1113 (codified at 42 U.S.C. §§ 247b(j)-(*l*) (1976)),[1] and the Federal Tort Claims Act ("Tort Claims Act"), Pub.L. No. 79–601, §§ 401–424, 60 Stat. 812, 842–47 (1946) (codified in scattered sections of 28 U.S.C.), a serviceman is precluded from recovering damages from the United States for injuries resulting from swine flu inoculation with a vaccine that was allegedly manufactured negligently or defectively because the Veterans' Ben-

efits Act, 38 U.S.C. § 301 *et seq.* (1976), provides the exclusive remedy. The governing inquiry here is the applicability of the so-called "*Feres* doctrine," which makes the benefits provided under the Veterans' Benefits Act the exclusive remedy for servicemen where their "injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). The same question was addressed by the D.C. Circuit in *Hunt v. United States,* 636 F.2d 580 (D.C.Cir.1980), which held that the *Feres* doctrine and its rationale do not preclude claims under the Swine Flu Act based on acts or omissions of private program participants. We agree.

I

On June 9, 1976, Kevin Lee Brown received a swine flu inoculation at Fort Hood, Texas. Brown was on active duty with the United States Army at that time, and the swine flue inoculation was a mandatory requirement of military service. Brown subsequently suffered illnesses he attributed to the vaccine and in 1978 filed an administrative claim with the Public Health Service seeking Swine Flu Act compensation for his injuries. When the claim was denied, Brown brought this lawsuit in the District of Oregon. Brown died during the pendency of the suit, and the suit was continued by his wife as personal representative. The complaint alleged that Brown's illnesses and death resulted from the swine flu vaccine and sought $2 million from the United States under the Swine Flu Act.

On October 22, 1976, Jose Cruz received a swine flu vaccination at the Alameda Naval Air Station in California. Thereafter, Cruz and his wife filed administrative claims seeking Swine Flu Act compensation, contending that Cruz suffered Guillain-Barre Syndrome as a result of the swine flu vaccination. When the claim was denied, the Cruzes filed this lawsuit in the Northern

---

1. The Swine Flu Act is no longer codified. *See* Health Services and Centers Amendments of 1978, § 202, Pub.L. No. 95–626, 92 Stat. 3551.

District of California for $600,000 in general damages, plus medical expenses.

The Judicial Panel on Multi-District Litigation transferred both suits, in conjunction with many other swine flu suits, to the United States District Court for the District of Columbia. In that court, the Government sought dismissal of the suits on the ground that, under *Feres* and its progeny, the Veterans' Benefits Act provides the sole remedy for service-connected injuries. The court refused to dismiss the suits and remanded the suits to the transferor courts, reasoning that in substituting the United States as a sole party defendant under the Swine Flu Act, Congress intended only to indemnify program participants against excessive liability and did not intend to deprive vaccinees of their existing common-law remedies against program participants.

After the cases were remanded to the transferor courts, the Government renewed its effort to dismiss the suits. The District Court for the District of Oregon granted summary judgment dismissing Brown's suit upon adopting a magistrate's finding and recommendation that the Swine Flu Act provides for the dismissal of tort claims covered by an alternate, and exclusive, federal compensation remedy, and that the *Feres* doctrine makes the Veterans' Benefits Act the plaintiff's exclusive remedy. The District Court for the Northern District of California refused to dismiss the Cruzes' suit, however, finding the reasoning in *Hunt* to be persuasive. Subsequently, the Government and the Cruzes stipulated to the entry of a $35,000 judgment for the plaintiffs, subject to the Government's right to pursue the *Feres* question on appeal. The timely appeals from the two district court judgments were consolidated since both appeals compel us to rule on the applicability of the *Feres* doctrine under similar factual circumstances. We have jurisdiction under 28 U.S.C. § 1291.

## II

Congress passed the Swine Flu Act in 1976 in response to the perceived threat of a widespread swine flu epidemic. The Act authorized the Department of Health, Education, and Welfare to establish and coordinate the swine flu immunization program. 42 U.S.C. § 247b(j)(1) (1976). The Department was to purchase the vaccine and provide it to state and federal health authorities, who would administer the vaccinations without charge to the recipients. *Id.* § 247b(j)(1)(A)-(D), (k)(2)(B).

In order to alleviate the vaccine manufacturers' and their insurers' concern over strict products liability and the defense of meritless suits, the Swine Flu Act took a unique approach to the problems of liability. *See generally id.* § 247b(k)(1) (1976) (congressional statement of purpose). A claim that would otherwise have been available against "program participants," who are vaccine manufacturers and administrators of inoculations as defined in section 247b(k)(2)(B), instead would be brought against the United States, utilizing the procedures of the Tort Claims Act, with the United States substituting for the program participants as the party defendant. *Id.* § 247b(k)(2)(A). Thus, the United States would be liable for personal injury or death resulting from the swine flu program

> arising out of the act or omission of a program participant [which is actionable] on *any theory of liability* that would govern an action against such program participant under the law of the place where the act or omission occurred, including negligence, strict liability in tort, and breach of warranty.

*Id.* § 247b(k)(2)(A)(i) (emphasis added). This remedy would preclude a direct action against a program participant, and any action erroneously brought against such a person would be defended by the United States and treated as an action against the Government. *Id.* § 247b(k)(3)–(5). The United States retained a right to indemnification from the program participant, recoverable in a separate action, for damages paid and costs incurred in defending a claim to the extent that the claim arose from the program participant's negligence or from its failure to comply with its contractual obligations to the United States. *Id.*

§ 247b(k)(7). Through this remedial scheme, the Government sought to remove major fears concerning possible products liability claims by providing the insurance coverage that the vaccine manufacturers had been denied in the private sector. *Hunt,* 636 F.2d at 592.

The Swine Flu Act makes the remedy it provides exclusive, 42 U.S.C. § 247b(k)(3), except "[w]here an action or proceeding under the [Swine Flu Act] *is precluded* because of the availability of a remedy through proceedings for compensation or other benefits from the United States," in which event the action or proceeding under the Swine Flu Act should be dismissed, *id.* § 247b(k)(5)(C). The crux of the Government's argument on appeal is that the plaintiffs' suits must be dismissed under section 247b(k)(5)(C) because benefits are available under the Veterans' Benefits Act. Plaintiffs have availed themselves of those benefits.[2] However, it is conceded that section 247b(k)(5)(C) does not mean that an action under the Swine Flu Act should be barred merely because another remedy against the Government is available; rather, it means that the suit is precluded when the other remedy is *exclusive.* *DiPippa v. United States,* 687 F.2d 14, 16 (3d Cir.1982); *Hunt,* 636 F.2d at 595. Yet, as the District of Columbia Circuit has noted in *Hunt,* the Veterans' Benefits Act does not by its terms constitute the exclusive remedy against the Government for all injuries sustained by the servicemen because there is no provision in the Veterans' Benefits Act expressly limiting the Government's liability.[3] *Hunt,* 636 F.2d at 585 (quoting *Brooks v. United States,* 337 U.S. 49, 53, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949)). The Government insists that, in the case of servicemen who are injured by defectively or negligently manufactured

swine flu vaccines, the Veterans' Benefits Act does constitute the exclusive remedy by operation of the *Feres* doctrine. Broadly speaking, the *Feres* doctrine states that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service," *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), because the Veterans' Benefits Act places an "upper limit of liability for the Government as to service-connected injuries," *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977). Thus, the Government would have us focus on the narrow issue of whether the plaintiffs have sustained injuries "incident to service." If they have, the Swine Flu Act mandates dismissal of the plaintiffs' suits according to the Government's theory because the Veterans' Benefits Act provides the sole remedy for such injuries.

### III

We have recently held that the only way to decide whether an injury falls within the ambit of *Feres* is to consider the facts of each case to see whether plaintiff's admitted activities at the time of the negligence are of the sort that would directly implicate the interests that the *Feres* doctrine was designed to protect. *Johnson v. United States,* 704 F.2d 1431, 1436 (9th Cir.1983).

As summarized in *Stencel Aero Engineering,* the *Feres* doctrine is predicated upon three factors: (1) the "distinctly federal" relationship between the United States and its service personnel, (2) the presence of an alternative "no-fault" military compensation system, and (3) the fear of intruding on military discipline. 431 U.S. at 671–72, 97

---

2. The Veterans' Benefits Act provides disability compensation to injured servicemen. 38 U.S.C. §§ 301–362. Brown had retired from the United States Army on 100% disability at the time his suit was filed. Cruz had retired from the United States Navy on 50% disability during the pendency of his suit.

3. Indeed, mere availability of the benefits under the Veterans' Benefits Act has not precluded all tort claims against the Government by servicemen. *See, e.g., Troglia v. United States,* 602 F.2d 1334 (9th Cir.1979); *Bryson v. United States,* 463 F.Supp. 908 (E.D.Pa.1978); *Hand v. United States,* 260 F.Supp. 38 (M.D.Ga.1966); *Downes v. United States,* 249 F.Supp. 626 (E.D. N.C.1965).

S.Ct. at 2057–58. Decisions subsequent to *Feres* have substantially weakened the persuasive force of the first two factors. *Johnson,* 704 F.2d at 1435. The first factor is not so persuasive because the argument that the military relationship is distinctly federal applies with equal force to relationships with other federal agencies that are liable under the Tort Claims Act. *Johnson,* 704 F.2d at 1435; *Jaffee v. United States,* 663 F.2d 1226, 1233 n. 7 (3d Cir.1981) (en banc), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Moreover, that factor is inapplicable here because "it is clear that the relationship between a private participant in the swine flu program and a member of the armed forces is not 'distinctly federal in character,'" and because "[a]bsent the Swine Flu Act, a member of the military would bring his action directly against the private party ... and the substitution of the United States as the party defendant—in providing a form of insurance protection—does not alter the basically private nature of the claim for relief." *Hunt,* 636 F.2d at 597.

The second factor lends itself to nebulous application in general because "it cannot be said that the presence of an alternative system either explains or justifies the *Feres* doctrine; it only makes the effect of the doctrine more palatable." *Hunt,* 636 F.2d at 598. *See also Johnson,* 704 F.2d at 1435 ("Although the Court mentioned [the second factor] in *Stencel* and *Feres,* it has rejected it in other equally appropriate cases.").

 The best explanation for the *Feres* doctrine can be found in the third factor—the fear of intruding on military discipline. *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 1857, 10 L.Ed.2d 805 (1963)

(the incident-to-service exception to the Tort Claims Act is "best explained" by the disciplinary rationale); *Johnson,* 704 F.2d at 1436 ("the necessity of safeguarding military discipline provides the most fundamental rationale for limiting recovery under the FTCA to injuries that are not incident to military service"); *Hunt,* 636 F.2d at 599 ("the protection of military discipline ... serves largely if not exclusively as the predicate for the *Feres* doctrine"). Accordingly, the most relevant line of inquiry in cases involving the applicability of the *Feres* doctrine is "whether or not the service member's activities at the time of injury are of the sort that could harm the disciplinary system if litigated in a civil action." *Johnson,* 704 F.2d at 1439. Like the District of Columbia Circuit, we conclude that "[g]overnmental liability under the Swine Flu Act for acts or omissions of a private program participant no more implicates military discipline than would any other liability based on the conduct of a private party." *Hunt,* 636 F.2d at 599.

 It is evident, therefore, that the *Feres* doctrine has no applicability here at all. The *Feres* doctrine is an exception to the Tort Claims Act; it operates to bar a claim based on "the negligent or wrongful act or omission of any employee of the Government," Tort Claims Act, 28 U.S.C. § 1346(b) (1976). Unlike the plaintiffs who sue under the Tort Claims Act, however, the plaintiffs here are not alleging that the Government was responsible in any way for their injuries.[4] The plaintiffs' causes of action are based instead on the defective or negligent manufacturing of the vaccines for which the plaintiffs could have sued the manufacturers directly, absent the Swine Flu Act.[5] The only reason why the United States had to be named the defendant here

---

4. For this reason, we cannot endorse the Government's emphatic attempt to invoke the *Feres* doctrine here merely because the plaintiffs were active servicemen who were ordered to take the vaccination that eventually caused them injuries. The plaintiffs are not complaining of any military order.

5. *See generally* Restatement (Second) of Torts § 402A (1965). While conceding this point, the Government attempts to minimize its signifi-

cance by citing *DiPippa v. United States,* 687 F.2d 14, 17–19 (3d Cir.1982), which held that federal employees covered by the Federal Employees Compensation Act ("FECA") may not sue the United States under the Swine Flu Act for the torts of private program participants. *DiPippa* addressed an entirely different issue, however: whether the mere fact that federal employees could assert a common-law action against private program participants directly in

468

is simply because the Swine Flu Act says so. Absent the Swine Flu Act, the plaintiffs need not have sued the Government, and the Tort Claims Act or the *Feres* exception would not have been pertinent to the plaintiffs' cause of action. Thus, none of the concerns justifying the invocation of the *Feres* doctrine is applicable here.

If the plaintiffs' Swine Flu Act suits must be dismissed, it is because the *Feres* doctrine makes the Veterans' Benefits Act the exclusive remedy for the plaintiffs. Because the *Feres* doctrine has no logical application to suits under the Swine Flu Act based on acts or omissions of private program participants, we hold that the plaintiffs may maintain their suits under the Swine Flu Act notwithstanding the benefits available to them under the Veterans' Benefits Act.

The order by the District Court for the District of Oregon dismissing Brown's suit is reversed and the case is remanded for further proceedings. The stipulated judgment for the Cruzes entered by the District Court for the Northern District of California is affirmed.

the absence of the Swine Flu Act should permit federal employees' actions under the Swine Flu Act against the United States as a surrogate defendant for injuries caused by defectively or negligently manufactured vaccines, notwithstanding the fact that the FECA provides the *exclusive* remedy against the Government. Because the Swine Flu Act requires dismissal of suit where there exists an alternate and exclusive remedy against the Government, 42 U.S.C. § 247b(k)(5)(C), the Third Circuit ruled as it did. (An exactly opposite result was reached by the Fourth Circuit in *Wallace v. United States,* 669 F.2d 947 (4th Cir.1982).) The alternative remedy involved here, however, is the Veterans' Benefits Act, which is exclusive only if the *Feres* doctrine applies. For the reasons already stated, we find *Feres* to be inapplicable when the United States is merely a surrogate defendant in the plaintiffs' suits under the Swine Flu Act.

We reject the Government's attempt to equate the remedial scheme of the Swine Flu Act to that in the Federal Drivers Act, 28 U.S.C. § 2679(b) (1976), and the federal malpractice immunity statutes, 10 U.S.C. § 1089, 38 U.S.C. § 4116, 42 U.S.C. § 233 (1976). Both types of statutes require that the tort claims against certain government employees for acts committed within the scope of their employment be brought under the Tort Claims Act. The net effect of the statutes is to "immunize" the individual employees concerned. *See, e.g., Thomason v. Sanchez,* 539 F.2d 955, 958 (3d Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977). Where the *Feres* doctrine applies to situations covered by the statutes, therefore, courts have limited the plaintiff's remedy to the Veterans' Benefits Act. *See, e.g., Hawe v. United States,* 670 F.2d 652, 653 (6th Cir.1982); *Thomason v. Sanchez,* 539 F.2d at 957. Irrespective of whether Congress intended to "immunize" the private program participants by the enactment of the Swine Flu Act, the Government must still show why the *Feres* doctrine is applicable here before the Veterans' Benefits Act can be deemed to constitute the exclusive remedy.