749 F.2d 1530
 53 USLW 2370
 Frieda Joyce JOHNSON, personal representative of the Estate
of Horton Winfield Johnson, for herself and for the Benefit
of Kevin Lee Nix, Cynthia Anne Johnson and Tamara Joyce Nix,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 83-5764.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 10, 1985.
Rehearing and Rehearing En Banc Denied March 26, 1985.
 
 Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Joel D. Eaton, Miami, Fla., for plaintiffs-appellants.
 Jeffrey D. Fisher, Sp. Asst. U.S. Atty., Linda Collins-Hertz, Jonathan Goodman, Asst. U.S. Attys., Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY and VANCE, Circuit Judges, and MAC MAHON*, District Judge.
 FAY, Circuit Judge:
 
 
 1
 Frieda Joyce Johnson, plaintiff, brought this wrongful death action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346, 2671-2680. She alleges that her husband died as a result of the negligence of air traffic controllers employed by the Federal Aviation Administration (FAA). The district court, relying on Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), granted the Government's motion to dismiss. We reverse.
 
 FACTUAL BACKGROUND[1]
 
 2
 Plaintiff's decedent, Horton Winfield Johnson, was a helicopter pilot for the United States Coast Guard, stationed in Hawaii. On January 7, 1982, Johnson and his aircraft were dispatched to search for a civilian boat in distress. Because inclement weather made visual navigation impossible, Johnson requested the civilian FAA controllers to assume positive radar control over the helicopter. The controllers did so and undertook guidance from the ground. Unfortunately, the helicopter was vectored into the side of a mountain on the island of Molokai. Johnson was killed in the crash.
 
 
 3
 After exhausting her administrative remedies, plaintiff brought this action on behalf of herself, her minor children, and her husband's estate, alleging negligence on the part of the civilian FAA air traffic controllers. The Government filed a motion to dismiss, arguing that since plaintiff's decedent was killed while acting within the course and scope of his military duties, the complaint failed to state a claim upon which relief could be granted under the FTCA. The district court agreed, citing only Feres, and dismissed the action with prejudice.[2]
 
 THE FERES DOCTRINE
 
 4
 Under the common law, the United States was shielded from suit by the doctrine of sovereign immunity. See Feres, 340 U.S. at 139, 71 S.Ct. at 156. In 1946, however, Congress enacted the FTCA, thus marking "the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit." Id. The FTCA provides that the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. Sec. 2674. It also vests in the district courts exclusive jurisdiction over civil actions against the United States based on the alleged negligence of government employees "where the United States, if a private person, would be liable to the claimant [under] the law of the place where the [negligence] occurred." Id. Sec. 1346(b). This consent to suit, however, was not unlimited. Congress listed exceptions to the applicability of the FTCA, see id. Sec. 2680, one of which excludes "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." Id. Sec. 2680(j). The text of the act does not mention a blanket prohibition on actions brought by servicemen qua servicemen, yet "the courts rushed in where legislators feared to tread." Parker v. United States, 611 F.2d 1007, 1009 (5th Cir.1980).
 
 
 5
 Soon after the FTCA was enacted, the Supreme Court was called upon to determine the statute's impact upon suits brought by servicemen or their survivors against the United States. In Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), a serviceman was injured when an army truck collided on a public highway with the civilian automobile in which he was a passenger. The court characterized the injury as one not incurred incident to service, and held that the clear language of the FTCA authorized the serviceman's negligence action against the United States. Id. at 51-52, 69 S.Ct. at 919-920.
 
 
 6
 Shortly after Brooks was decided, the Supreme Court had occasion to address the applicability of the FTCA to a factual situation not before the Court in Brooks, to wit, a suit against the United States when "each claimant, while on active duty and not on furlough, sustained injury due to the negligence of others in the armed forces." Feres, 340 U.S. at 138, 71 S.Ct. at 155.[3] The court in Feres held that the FTCA did not waive the Government's sovereign immunity for injuries to members of the armed services where the injuries arose out of or were in the course of activity incident to service. Id. at 146, 71 S.Ct. at 159. The court offered the following bases for its holding: (1) the absence of parallel private liability; (2) the belief that since state law must be consulted under the FTCA, it would be irrational to leave servicemen injured by others in the military dependent upon geographic considerations over which they have no control; (3) the "distinctively federal character" of the relationship between the United States and those in the military; and (4) the availability of a no-fault compensation system. Id. at 141-46, 71 S.Ct. at 156-59.
 
 
 7
 Four years after Feres, the Supreme Court decided United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In that case Veterans Administration doctors operated on the knee of a veteran; the knee had been injured while he was on active duty. The veteran brought suit, alleging negligent medical treatment. Despite the fact that the veteran received enhanced disability benefits as a result of the surgery, the court held that his FTCA claim was not barred since the injury sued on occurred after he was discharged from service. Id. at 111-112, 75 S.Ct. at 142-143. The most significant aspect of the Brown case is not its holding; rather, it is the following statement which has come to be regarded as the single most important, and defensible, rationale for the Feres doctrine which has emerged as Brown's most significant contribution:
 
 
 8
 The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the [Feres ] Court to read that Act as excluding claims of that character.
 
 
 9
 Brown, 348 U.S. at 112, 75 S.Ct. at 143.
 
 
 10
 Some of the theoretical underpinnings of the Feres decision fell on hard times after Brown. For example, the view that the FTCA did not contemplate the creation of a "novel and unprecedented," Feres, 340 U.S. at 141, 71 S.Ct. at 157, cause of action against the United States was undermined in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and Rayonier Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). In Indian Towing, the Supreme Court refused to bar an FTCA claim based on the alleged negligence of the Coast Guard in operating a lighthouse beacon. Over a vigorous dissent arguing the applicability of Feres, see Indian Towing, 350 U.S. at 70, 76 S.Ct. at 127 (Reed, J., dissenting, joined by Burton, Clark, & Minton, J.J.), the court expressly rejected the Government's contention that the FTCA excluded claims based on the negligent performance of an activity unique to the government. Id. at 66-69, 76 S.Ct. at 125-127. The court reasoned that to premise FTCA liability on the "completely fortuitous circumstance" of "the presence or absence of identical private activity" would be to "attribut[e] bizarre motives to Congress." Id. at 67, 76 S.Ct. at 125. Similarly, in Rayonier, where the court held that an FTCA action could be maintained for the alleged negligence of federal firefighters, the court stated:
 
 
 11
 It may be that it is "novel and unprecedented" to hold the United States accountable for the negligence of its firefighters, but the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability.
 
 
 12
 Rayonier, 352 U.S. at 319, 77 S.Ct. at 377 (emphasis added).
 
 
 13
 The continued viability of the Feres doctrine was again questioned, albeit implicitly, in United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), where the Supreme Court was asked to decide whether a federal prison inmate could sue under the FTCA for personal injuries sustained while incarcerated. The Government argued that both Feres and the potential adverse effect liability would have on prison discipline warranted implying an exception to the FTCA so as to bar prisoner claims. Although it was careful not to question the Feres doctrine in the military context, see id. at 159, 83 S.Ct. at 1856, the court's reasoning can arguably be seen as further erosion of the doctrine's supporting rationales. The court echoed the Rayonier conclusion that the absence of analogous private liability was no impediment to FTCA liability, id. (citing Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139), and also noted that "the presence of a compensation system ... does not of necessity preclude a suit for negligence." Muniz, 374 U.S. at 160, 83 S.Ct. at 1856. Further, the court regarded the supposed adverse effect diverse state personal injury laws would have on prison administration as "more a matter of conjecture than reality," id. at 161, 83 S.Ct. at 1856, and the Government's fear that some prisoners might be prejudiced by a non-uniform right to recover was seen by the court as no excuse for denying them recovery altogether. Id. at 162, 83 S.Ct. at 1857. Finally, the court invoked the gloss placed on Feres in Brown, and stated that Feres was "best explained" by the fear of what might happen if FTCA suits questioning orders given or acts committed in the course of military duty were allowed, as well as the effect intramilitary litigation might have on the soldier-superior relationship and military discipline. Id. (quoting Brown, 348 U.S. at 112, 75 S.Ct. at 143). Applying this "explanation" to the facts before it, the court in Muniz concluded that while it was possible that litigating prisoner claims would damage prison discipline, the spectre raised by the Government was more hypothetical than real. Muniz, 374 U.S. at 163, 83 S.Ct. at 1858. The court accordingly allowed the plaintiff to pursue his FTCA claim.
 
 
 14
 Despite the apparent inroads on the theoretical predicates of the Feres doctrine, Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), made it abundantly clear that the doctrine "refused to die the quiet death that some had anticipated." Hunt v. United States, 636 F.2d 580, 588 (D.C.Cir.1980). In Stencel, a serviceman injured when an aircraft ejection system malfunctioned brought suit against the United States and Stencel, the manufacturer of the system. Stencel cross-claimed against the Government for indemnity alleging, inter alia, that any malfunction in the ejection system was due to the Government's provision of faulty specifications, requirements, and components. Both the district court and the Eighth Circuit concluded that the serviceman's claim against the United States and Stencel's cross-claim were barred by the Feres doctrine. Stencel, 431 U.S. at 669, 97 S.Ct. at 2056. Stencel appealed.
 
 
 15
 To decide whether to allow Stencel's cross-claim when the serviceman's claim against the Government was barred by the Feres doctrine, see id. at 673, 97 S.Ct. at 2058-2059, the court found it necessary to examine the doctrine's supporting rationales. In doing so, the court "dusted off and reasserted," Parker, 611 F.2d at 1011, some of the factors mentioned in Feres and thought discredited by intervening decisions. See id.; Hunt, 636 F.2d at 588. The court identified three factors it apparently considered controlling in Feres doctrine analysis: (1) the distinctively federal character of the relationship between the soldier and the sovereign; (2) the existence of a no-fault statutory compensation scheme which serves as a substitute for governmental tort liability; and (3) the Brown court's concern about the effect on the military disciplinary structure that would obtain if tort litigation were countenanced. Stencel, 431 U.S. at 670-73, 97 S.Ct. at 2057-59. The court applied each of these factors to the cross-claim indemnity situation, and concluded that the FTCA did not authorize Stencel's claim "for essentially the same reasons that the direct action by [the serviceman] is barred by Feres." Id. at 673, 97 S.Ct. at 2059.
 
 
 16
 That Stencel was not a jurisprudential aberration was recently confirmed in Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In that case, five Navy enlisted men who served on board a combat vessel brought suit against several of their superiors, alleging unconstitutional discrimination. The court acknowledged that Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), authorized damage suits against federal officials for constitutional violations in the absence of "special factors counselling hesitation." Chappell, 103 S.Ct. at 2364 (quoting Bivens, 403 U.S. at 396, 91 S.Ct. at 2005). The court therefore undertook to locate any such factors. Enter Feres.
 
 
 17
 The court in Chappell found that "[t]he 'special factors' that bear on the propriety of [plaintiffs'] Bivens action also formed the basis of this Court's decision in Feres." Chappell, 103 S.Ct. at 2364. It then catalogued three of the bases of the Feres doctrine: (1) the lack of congressional intent to create a new cause of action with the FTCA; (2) the existence of a statutory compensation system for members of the armed services who are injured or killed; and (3) the unique relationship of the soldier to his superior, and the effect of intramilitary litigation on discipline. Id. at 2364-65. Although the court in Chappell referred to these three rationales for the Feres doctrine as guiding its analysis, its emphasis was clearly on the third factor. See Brown v. United States, 739 F.2d 362, 365 (8th Cir.1984). The court focused its analysis on the military's unique need for discipline, the existence of military alternatives to civilian judicial review, and Congress' plenary constitutional authority over the military, and concluded that "special factors" did indeed militate against providing enlisted military personnel a Biven's -type remedy against their superiors. Chappell, 103 S.Ct. at 2367.
 
 
 18
 Regardless of the "widespread, almost universal criticism of Feres by the lower federal courts and commentators," In re "Agent Orange" Product Liability Litigation, 580 F.Supp. 1242, 1246-47 (E.D.N.Y.1984) (citing Hinkie v. United States, 715 F.2d 96 (3d Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984); Scales v. United States, 685 F.2d 970 (5th Cir.1982), cert. denied, 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983); Hunt, 636 F.2d 580; Veillette v. United States, 615 F.2d 505 (9th Cir.1980); Peluso v. United States, 474 F.2d 605 (3d Cir.), cert. denied, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973); Hitch, The Federal Tort Claims Act and Military Personnel, 8 Rutgers L.Rev. 316 (1954); Rhodes, The Feres Doctrine After Twenty-Five Years, 18 A.F.L.Rev. 24 (1976); Note, From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?, 77 Mich.L.Rev. 1099 (1977)), it nonetheless "is beyond question that it is the law." Brown, 739 F.2d at 365 (quoting Laswell v. Brown, 683 F.2d 261, 265 (8th Cir.1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983)). We now turn to its application to the facts of this case.
 
 APPLICATION OF FERES DOCTRINE
 
 19
 Plaintiff asserts that, despite Stencel, we should bite the bullet, so to speak, and jettison those rationales for the Feres doctrine which have been criticized over the years. According to plaintiff, whenever a court is faced with a Feres doctrine defense, the inquiry should be limited to the effect maintenance of the suit would have on the military disciplinary structure.[4] Since litigating her FTCA claim, which is based solely on the conduct of civilians performing a civilian service, see infra note 10, will not implicate "[t]he most compelling rationale for the Feres doctrine," Brown, 739 F.2d at 365, plaintiff contends that the district court should be reversed. The Government, on the other hand, essentially argues that plaintiff's suit is barred simply because her decedent was killed while performing a Coast Guard mission;[5] that the alleged tortfeasors are civilian employees of the FAA who were acting in purely civilian capacities when the alleged tort occurred is, in the Government's view, wholly irrelevant. Although we reach the result sought by the plaintiff, we need not decide whether the approach she advances is appropriate when the tort sued upon is based on the conduct of a member of the military.[6] We also decline the Government's invitation to affirm the district court in automaton fashion.
 
 
 20
 Parker, 611 F.2d 1007, is the appropriate analytical point of departure. In that case, Parker, an off-duty serviceman who was driving a civilian vehicle to his off-base home, was killed in a collision with a military vehicle driven by another serviceman. The accident occurred on an army maintained road within the confines of the military base where Parker was stationed. Earlier that day, Parker had received permission to be away from his duties for the next four days. The court framed the issue as whether, in these circumstances, Parker was engaged in activities incident to his military service at the time of his death. Id. at 1009. After examining Parker's duty status at the time of the accident, the location of the accident, and what he was doing when the accident happened, the court concluded that the wrongful death action was not barred by the Feres doctrine. Id. at 1013-15.
 
 
 21
 Both parties rely on Parker in support of their positions.[7] Contrary to plaintiff's understanding of that decision, however, the Parker court did not hold as it did because allowance of the suit would not directly implicate any of the Feres doctrine rationales as elucidated in Stencel. Rather, the court specifically noted that the "Distinctively Federal Character" and "Relation of Soldier to Superiors" rationales are more relevant to the wisdom of implying an exception to the FTCA in the first instance, than they are to determining whether, given a particular factual situation, a serviceman was injured "incident to service." Id. at 1012-13. Similarly, the alternative compensation rationale was of no particular relevance to the court's inquiry since the compensation system is deemed to be the exclusive remedy for a serviceman's injuries only when the injuries are a result of activity that is incident to service. Id. at 1012.
 
 
 22
 This does not mean, however, that Parker supports the Government's position. The facts in Parker, and nearly all the cases decided by reference to Feres, involved the typical Feres factual paradigm--an FTCA suit for injuries or death allegedly caused by the negligence of a serviceman or an employee of the armed forces. See, e.g., Brooks, 337 U.S. at 50, 69 S.Ct. at 919 (negligence of civilian employee of the United States Army); Feres, 340 U.S. at 138, 71 S.Ct. at 155 ("negligence of others in the armed forces"); Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (negligence of Veterans Administration medical personnel). As we see it, the teaching of Feres and its progeny, notably Parker, is that when the Feres factual paradigm is present, the issue is whether the injury arose out of or during the course of an activity incident to service. See Feres, 340 U.S. at 146, 71 S.Ct. at 159. If, however, the alleged tortfeasor is not a member of the armed forces or a civilian employee engaged in activities usually associated with the armed forces, we conclude that a court should consult the Feres doctrine rationales as set forth in Stencel "to determine to what extent, if any, allowance of [the] claim would circumvent the purposes of the [FTCA] as ... construed by the [Supreme] Court." Stencel, 431 U.S. at 670, 97 S.Ct. at 2057. This approach is not novel. The Supreme Court, in those situations not fitting neatly into the Feres factual paradigm, has found it entirely appropriate to inquire if the doctrine's rationales applied with equal vigor to the facts before it so as to justify immunizing the government or a governmental official from liability. The Chappell, Stencel, and Muniz courts employed this analysis.
 
 
 23
 Our decision to employ such an approach is further buttressed by a particularly instructive case, Hunt v. United States, 636 F.2d 580 (D.C.Cir.1980). In Hunt, three plaintiffs brought suit alleging that mandatory swine flu inoculations received while on active duty caused them serious illness. As in this case, a rigid literal reading of Feres would have required barring the plaintiffs' claims against the United States since the plaintiffs were on active duty when required to do that which eventually caused them the harm sued upon. Yet the Hunt court resisted the temptation to automatically extend the Feres bar to a factual situation not akin to the Feres factual paradigm.[8] The court instead found that the Feres doctrine was not directly applicable. Id. at 597. It therefore felt impelled to "examine the policies on which the [Feres ] doctrine rests to determine whether its application would be appropriate," id., given the unique facts presented. The court concluded that none of the policies behind the Feres doctrine, "[a]s recapitulated in Stencel," id., supported exempting the Government from liability simply because the United States was the defendant, and accordingly held that the doctrine was no bar to governmental liability.[9] Id. at 597-600.
 
 
 24
 We also conclude, employing this analysis, that the Feres doctrine does not bar plaintiff's FTCA claim. This much-maligned doctrine, as we have seen, is best explained by the desire to avoid civilian court inquiry into matters that the Supreme Court views as best left beyond the pale of judicial scrutiny. This desire is understandable, given the fact that "the military is, of necessity, a specialized society separate from civilian society." Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974). Recognizing the uniqueness of the military, the Supreme Court has consistently been chary of countenancing civilian court litigation brought by servicemen against fellow soldiers or superior officers. For example, the court recently reasoned that "the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel," Chappell, 103 S.Ct. at 2367, militated against exposing officers sued by their subordinates to a Bivens remedy. Id. In Stencel, the court disallowed third-party indemnity claims against the United States arising out of service-connected injuries to soldiers, in part because "[t]he trial[s] would ... involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions." Stencel, 431 U.S. at 673, 97 S.Ct. at 2059. Similarly, the Brown court expressed its concern over the effect intramilitary litigation might have on discipline, particularly when the suit involved "negligent orders given or negligent acts committed in the course of military duty." Brown, 348 U.S. at 112, 75 S.Ct. at 143. The common thread running through these cases is the reluctance to upset, via the civilian forum, the delicate relationships which must exist for the military system to properly function.
 
 
 25
 With these principles in mind, we have little difficulty concluding that the Feres doctrine does not bar plaintiff's FTCA suit. The complaint in this case alleges that plaintiff's decedent was killed because civilian FAA air traffic controllers negligently guided the helicopter he was piloting into a mountain. There is absolutely no hint in the scant record before this court that the conduct of any alleged tortfeasor even remotely connected to the military will be scrutinized if this case proceeds to trial.[10] Nor is there a suggestion that examining the conduct of a civilian would in any way implicate the military services. Since the prosecution of plaintiff's claim cannot conceivably involve or compromise a military relationship or, for that matter, the military disciplinary structure, the prosecution of plaintiff's claim will not encroach upon the rationale which "serves largely if not exclusively as the predicate for the Feres doctrine." Hunt, 636 F.2d at 599. We therefore are unable to discern any sound reason for barring plaintiff's suit under the Feres doctrine.[11]
 
 
 26
 We acknowledge that the Ninth Circuit, in a case strikingly similar to this one, has reached the opposite conclusion. In Uptegrove v. United States, 600 F.2d 1248 (9th Cir.1979), cert. denied, 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980), a Navy lieutenant flying home on leave as a military space available passenger aboard an Air Force C-141 transport was killed when it crashed into a mountain. His wife brought a negligence action against the United States and three FAA air traffic controllers. The Ninth Circuit, concluding that the lieutenant was killed while engaging in activity incident to service, held that the Feres doctrine barred the suit. The court reasoned that the Supreme Court has never indicated that the Feres doctrine applies only to situations involving a threat to military discipline, Uptegrove, 600 F.2d at 1250 (citing United States v. Lee, 400 F.2d 558, 564 (9th Cir.1968), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969)), and the focus in a Feres doctrine case should be solely on the serviceman's military status, not the status of the tortfeasor. Uptegrove, 600 F.2d at 1251 (citing Lee, 400 F.2d at 562).
 
 
 27
 With all due respect to the Ninth Circuit, it is our view that Uptegrove was wrongly decided. As an initial matter, the court accorded no weight at all to the fundamental fact that in Stencel, Brown, Feres, and Brooks, the relevant Supreme Court benchmarks antedating the Uptegrove decision, the alleged tortfeasor was a serviceman or an employee of the military, not an employee of a civilian branch of the Government performing a civilian task. Ignoring this distinction and blindly applying a rule to a factual scenario materially different from that which spawned the rule itself "has the virtue of easy application, [but is not] the better jurisprudential course." Brown, 739 F.2d at 366 (quoting Miller v. United States, 643 F.2d 481, 493 (8th Cir.1981) (en banc)). Moreover, the Ninth Circuit's statement that a threat to military discipline need not be present for Feres to apply reveals a misunderstanding of the third rationale for the Feres doctrine.[12] By definition, whenever the lawsuit is based on injuries incurred incident to service, and the Feres factual paradigm is present, the "military discipline" rationale is implicated because the Supreme Court "has found it unseemly to have military personnel, injured incident to service, asserting claims that question the propriety of decisions or conduct by fellow members of the military." Hunt, 636 F.2d at 599. Additionally, in the post-Brown Supreme Court cases where the Feres doctrine was consulted for guidance, the doctrine's third rationale figured prominently in the court's decisions. See Chappell, 103 S.Ct. at 2365, 2367; Stencel, 431 U.S. at 673, 97 S.Ct. at 2058; Muniz, 374 U.S. at 162-63, 83 S.Ct. at 1857-58. Finally, while the Ninth Circuit's position that the status of the tortfeasor need not be examined may be defensible when the Feres factual paradigm is present, it is not as defensible when the facts permit the court to decide whether to imply an exception to the FTCA. Cf. Feres, 340 U.S. at 142, 71 S.Ct. at 157 (Court, when discussing analogous private liability, cautioned against "ignor[ing] the status of both the wronged and the wrongdoer").
 
 CONCLUSION
 
 28
 Despite the barrage of criticisms leveled at the Feres doctrine and its theoretical predicates over the years, the fact remains that it still is the law.[13] We accordingly must adhere to it until instructed to do otherwise by the Supreme Court or Congress. That does not mean, however, that we should blindly hand to the Government judicially-created immunity from suit in a factual situation not present in, nor contemplated by, the Feres decision. Having determined that the principal raison d'etre of the Feres doctrine will not be implicated by allowing plaintiff to pursue her claim against the Government, we decline to extend the doctrine to bar her suit. Therefore, the fact that serviceman Johnson was killed while on a Coast Guard mission is simply not controlling. We are mindful of an observation made by the Supreme Court in a related context: "There is no justification for this court to read exemptions into the [FTCA] beyond those provided by Congress. If the [FTCA] is to be altered that is a function for the same body that adopted it." Muniz, 374 U.S. at 166, 83 S.Ct. at 1859 (quoting Rayonier, 352 U.S. at 320, 77 S.Ct. at 377).
 
 
 29
 The judgment of the district court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Lloyd F. MacMahon, U.S. District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Properly viewed, this case involves an appeal from an order dismissing the action for want of jurisdiction. See infra note 2. We therefore accept as true, for purposes of this appeal, the factual allegations contained in plaintiff's complaint. See Radovich v. Nat'l Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); Eaton v. Dorchester Dev., Inc., 692 F.2d 727 (11th Cir.1982)
 
 
 [2]
 We note that the Government erroneously contended that since the Feres doctrine barred plaintiff's suit, the complaint failed to state a claim upon which relief could be granted. The law is clear that "since a defense based on the Feres doctrine is premised on the notion that there is no jurisdiction to hear the claim as the United States has not waived sovereign immunity for that kind of suit, such [a defense] should be raised by a motion to dismiss for lack of subject matter jurisdiction." Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1157 (5th Cir.1981). It follows that a court which accepts the Feres doctrine defense should not also attempt to adjudicate the merits of the case. Id. at 1157. This, however, is precisely what occurred when the district court dismissed plaintiff's complaint with prejudice, because "[a] dismissal for failure to state a claim is a disposition on the merits." Id. at 1158. In light of our holding, this error is of no consequence
 
 
 [3]
 The Feres decision actually involved three actions against the United States. The Feres case was a wrongful death action brought by the executrix of Feres' estate in which, inter alia, it was alleged that Feres was negligently quartered in a barracks having a defective heating plant. Feres, 340 U.S. at 136-37, 71 S.Ct. at 154-55. In Jefferson v. United States and United States v. Griggs, the plaintiffs alleged medical malpractice on the part of military physicians. Id. at 137, 71 S.Ct. at 155
 
 
 [4]
 In support of this view, plaintiff contends that Chappell "mentions only the military discipline rationale of Feres, and therefore implicitly disavows the first two makeweights historically mustered in support of the Feres doctrine." Reply Brief of Appellant at 6. What we are not free to do, however, is ignore three crucial facts. First, the Chappell court did not confine its discussion of Feres to the military discipline rationale. See supra p. 1535. The Chappell court specifically referred to the Feres court's "focus[ ] on the unique relationship between the government and military personnel," Chappell, 103 S.Ct. at 2365, when that court held that the FTCA did not create a new cause of action against the United States. Further, the Chappell court noted that the Feres decision was influenced by congressional " 'enactments ... which provide systems of simple, certain, and uniform compensation for injuries or death of those in the armed services.' " Id. (quoting Feres, 340 U.S. at 144, 71 S.Ct. at 158). Second, the reasoning employed by the Chappell court. The court was acutely aware that it was being asked to countenance a Bivens remedy in an area over which Congress exercised plenary constitutional authority. Chappell, 103 S.Ct. at 2365-67. Moreover, the decision in Chappell was informed by the existence of (1) statutes regulating military life; (2) a comprehensive military justice system; and (3) a civilian board which is empowered to review a serviceman's military record. Id. at 2366-67. Surely these factors are analogous to the first two Feres doctrine rationales. Third, even if the Chappell court had completely ignored these rationales, which it did not, we would be hard pressed to infer from that fact a "disavowal" of them. In Chappell the named defendants were individual naval officers, not the United States. Therefore, it is arguable that the rationale concerning the distinctively federal relationship between the United States and its servicemen is inapposite. Also, the failure to discuss a military compensation system for injuries or death would be understandable given the fact that this system hardly could be used as a substitute for money damages for racial discrimination. In short, we are not able to read Chappell as broadly as does the plaintiff
 
 
 [5]
 The Government correctly notes that the Coast Guard is considered to be a military service and branch of the armed forces at all times, 14 U.S.C. Sec. 1, and that when serviceman Johnson was killed he was fulfilling one of the Coast Guard's primary duties. By statute, the Coast Guard is required to establish and maintain "rescue facilities for the promotion of safety on ... the high seas and waters subject to the jurisdiction of the United States." Id. Sec. 2. To discharge this responsibility, the Coast Guard is authorized to "perform any and all acts necessary to rescue and aid persons and protect and save property." Id. Sec. 88(a)(1). The unique facts of this case, however, present a rather interesting wrinkle. Absent a declaration of war or presidential directive, the Coast Guard is a service in the Department of Transportation, not the Navy. Id. Secs. 1 & 3. As a consequence, serviceman Johnson and the alleged tortfeasors were employees of the same department. See infra note 10
 
 
 [6]
 As we understand it, plaintiff's position is that even if the serviceman's injuries are caused by the negligence of others in the military, the court should examine the facts of the case to see if maintenance of the suit would threaten the military disciplinary structure. A review of the law in this area reveals that this position has its advocates. The Ninth Circuit, for example, in Johnson v. United States, 704 F.2d 1431 (9th Cir.1983), did conduct such an inquiry in determining whether an active duty serviceman who was injured by another active duty serviceman was engaging in activities incident to his service at the time of his injury. After discounting the first two rationales for the Feres doctrine as set forth in Stencel, the Johnson court stated that "the necessity of safeguarding military discipline provides the most fundamental rationale for limiting recovery under the FTCA to injuries that are not incident to military service." Id. at 1436. After viewing the facts of the case "in light of [this] underlying disciplinary rationale," id., the court allowed the FTCA claim to proceed, since "the civil litigation of negligence claims such as Johnson's could not possibly have any effect whatsoever on military discipline." Id. at 1439; see Lee v. United States, 261 F.Supp. 252, 256 (C.D.Cal.1966) (cited in Stanley, 639 F.2d at 1152), rev'd, 400 F.2d 558 (9th Cir.1968), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); Downes v. United States, 249 F.Supp. 626, 628 (E.D.N.C.1965) (To determine whether a serviceman was injured incident to military service, the real question is: "Was plaintiff performing duties of such a character as to undermine traditional concepts of military discipline if he were permitted to maintain a civil suit for injuries resulting therefrom?"); see also Brown, 739 F.2d at 366 (To decide whether a serviceman was engaged in activity incident to service when injured, the court must "examine the facts of each case ... and determine whether they fall within the reasons given by the Supreme Court for its conclusion in Feres.") (quoting Miller v. United States, 643 F.2d 481, 493 (8th Cir.1981) (en banc)); cf. Stanley, 639 F.2d at 1152 (serviceman's FTCA claim barred by Feres doctrine in part because "the relationship between [the plaintiff] and the alleged negligent individuals stemmed from their official military relationship"). But see Torres v. United States, 621 F.2d 30, 32 (1st Cir.1980) (Feres doctrine bars FTCA suit "even in the absence of a clear nexus between the injury and military discipline") (citing Hall v. United States, 451 F.2d 353 (1st Cir.1971)); Uptegrove v. United States, 600 F.2d 1248 (9th Cir.1979), cert. denied, 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980); United States v. Lee, 400 F.2d 558 (9th Cir.1968), rev'g 261 F.Supp. 252 (C.D.Cal.1966), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969)
 Sound as this approach might be, we do not feel it is necessary in this instance because we are not faced with a typical Feres factual paradigm. We do note that some courts have not embraced a case-by-case inquiry into whether allowing a particular suit would threaten military discipline. See Hunt, 636 F.2d at 599 n. 51; Hall, 451 F.2d at 354 ("If every injury 'aris[ing] out of or ... incident to service,' [Feres ], 340 U.S. at 146, 71 S.Ct. at 159, must invite inquiry, not only would the difficulties of what, legally, would constitute discipline-connected be substantial, but the Armed Services would be faced with maintaining a claims department."). Arguably, Parker, 611 F.2d 1007, also suggests that any such case-by-case inquiry is inappropriate when the alleged tortfeasor is a member of the armed services. See infra pp. 1537-1538. We feel free to conduct such an inquiry here, however, since we must determine "whether, as a general question of law, the Feres doctrine should be extended to", Hunt, 636 F.2d at 599 n. 51 (emphasis added), a factual situation radically different from the typical Feres doctrine case, where the alleged tortfeasor is a member of the armed services. See infra pp. 1538-1539. The alleged tortfeasor here is a civilian.
 
 
 [7]
 Plaintiff argues that lurking between the lines in Parker is a rejection of the first two factors identified in Stencel as supporting the Feres doctrine, even though the Parker court acknowledged that Stencel "reaffirmed that the doctrine lives." Parker, 611 F.2d at 1010. Since maintaining the suit in Parker was seen as not interfering with military discipline, see id. at 1013, and the FTCA suit was allowed in that case, plaintiff suggests that Parker dictates the same result here. Predictably, the Government views Parker as support for its position because, unlike the situation in that case, plaintiff's decedent was piloting a Coast Guard helicopter pursuant to orders from his superiors at the time of his death. The simplicity of both positions is appealing, but Parker stands for neither position
 
 
 [8]
 Briefly put, the swine flu immunization program established that a claim otherwise available against the manufacturer of the vaccine could be brought against the United States as a substitute party defendant. Hunt, 636 F.2d at 592. The Hunt court viewed this situation as materially different from that which would be presented if the servicemen alleged they had been injured by fellow members of the armed services. If the alleged tort had been committed by a fellow serviceman, the Feres doctrine would bar suit against the United States. Id. at 595 n. 40, 596 n. 42
 
 
 [9]
 The Hunt court's reasoning was recently echoed by the Ninth Circuit in Brown v. United States, 715 F.2d 463 (9th Cir.1983), another case involving a serviceman's suit against the Government for injuries allegedly resulting from mandatory swine flu inoculation. The court relied extensively on Hunt and its earlier decision in Johnson, 704 F.2d 1431, see infra note 6, to hold that the serviceman's suit was not barred by the Feres doctrine. The Fifth Circuit, in Scales v. United States, 685 F.2d 970, 971 (5th Cir.1982), cert. denied, 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983), held that the Feres doctrine barred an infant's FTCA suit alleging that he was born with congenital rubella syndrome as a result of negligent medical treatment his mother received while on active duty in the Air Force. It reached this result, however, by utilizing the same analysis that the Hunt and Brown, 715 F.2d 463, courts utilized. See Scales, 685 F.2d at 973 ("Stencel and its progeny direct our inquiry to the manner in which the policies underlying Feres are affected--specifically the impact on military discipline--rather than to the status of the claimant.")
 
 
 [10]
 Although we have no cause to doubt that the FAA could have been placed under the direct control of the armed forces, the fact remains that Congress chose to make the FAA a civilian administration within the Department of Transportation. See Act of Jan. 12, 1983, Pub.L. No. 97-449, 1982 U.S.Code Cong. & Ad.News (96 Stat. 2413) (2416) (to be codified at 49 U.S.C. Sec. 106(a)) (revising without substantive change 49 U.S.C. Sec. 1341(a)). It bears mentioning that the Administrator of the FAA must be a civilian, and if the Administrator is a former regular officer of an armed service, the Deputy Administrator may not be an officer on active duty in an armed service, a retired regular officer in an armed service, or a former regular officer in an armed service. Act of Jan. 12, 1983, Pub.L. No. 97-449, 1982 U.S.Code Cong. & Ad.News (96 Stat. 2413) (2416) (to be codified at 49 U.S.C. Sec. 106(c) & (d)) (revising without substantive change 49 U.S.C. Secs. 1341(b), 1342(b), and 1652(e)(2))
 
 
 [11]
 As we have seen, the military discipline rationale for the Feres doctrine, first offered by the Supreme Court in Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139, has come to be viewed as the doctrine's "best explanation." See Chappell, 103 S.Ct. at 2365; Muniz, 374 U.S. at 162, 83 S.Ct. at 1857. We have not discovered any Supreme Court case decided since the Brown court's amplification of the Feres decision suggesting that we should extend the doctrine to bar a suit which cannot conceivably impinge on the military disciplinary structure
 
 
 [12]
 We also doubt that the Ninth Circuit, if faced with the Uptegrove fact pattern today, would be so rigid in its analysis. See supra notes 6 & 9 for a discussion of Johnson, 704 F.2d 1431, and Brown, 715 F.2d 463, recent Ninth Circuit cases which emphasized the military discipline rationale for the Feres doctrine
 
 
 [13]
 It should be noted that the Supreme Court recently accepted an invitation to revisit the Feres doctrine. See Shearer v. United States, 723 F.2d 1102 (3d Cir.1983), cert. granted, --- U.S. ----, 105 S.Ct. 321, 83 L.Ed.2d 259 (1984)