760 F.2d 1217
 Brenda J. RAYNER, for herself & minor children Brenton S.
Rayner, Christopher S. Rayner & Bruce S. Rayner,
as widow and surviving children of Sgt.
Benton Ward Rayner, Jr.,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 83-8884.
 United States Court of Appeals,
Eleventh Circuit.
 May 21, 1985.
 
 Jerry D. Sanders, Steve Dugan, Columbus, Ga., for plaintiffs-appellants.
 Greg Leonard, Asst. U.S. Atty., Jack Hood, Macon, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before TJOFLAT and JOHNSON, Circuit Judges, and DUMBAULD*, District Judge.
 PER CURIAM:
 
 
 1
 This suit was brought against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346, 2671-2680 (1982), for the death of a serviceman allegedly caused by the doctors and staff of a military hospital. The district court granted summary judgment for the government. We affirm under the authority of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).
 
 
 2
 Sergeant Benton W. Rayner, Jr. was serving on active duty with the United States Army at Camp Grayling, Michigan, when, on April 26, 1982, he was admitted to Mercy Hospital, Grayling, Michigan, with complaints of back pain. Due to his active duty status, he was transferred to Ireland Army Hospital at Fort Knox, Kentucky; he arrived at Fort Knox on May 1, 1982, and was placed under the care of Army physicians at that facility. The Army assigned Sergeant Rayner to a medical holding company during the course of his treatment at the Ireland Army Hospital. He continued to draw his full pay and remained on active duty subject to military discipline and orders.
 
 
 3
 After consulting with the Army doctor supervising his case, Sergeant Rayner elected to undergo a myelogram[1] on September 30, 1982, as an outpatient at Audubon Hospital, Louisville, Kentucky. Rayner returned to Ireland Army Hospital that evening and began complaining of severe headaches, weakness, nausea, and vomiting, all of which are alleged to be symptoms of a reaction to isotonic metrizamide, the contrasting agent used in the myelogram. The Ireland Army Hospital staff failed to diagnose the alleged condition. The following day they sent him to his quarters and told him that the symptoms were normal and had to run their course. Sergeant Rayner's condition deteriorated, and on October 6, 1982, Sergeant Rayner's wife called her husband's physician. The doctor was unavailable but his office told her that he would return her call right away. Two hours later, while she was waiting for the doctor's telephone call, Sergeant Rayner experienced seizures and episodes of tongue biting. At this point, Mrs. Rayner called for an ambulance which took her husband to the Ireland Army Hospital Emergency Room where he suffered additional seizures which were diagnosed as grand mal seizures. An hour later, Sergeant Rayner's physician came to the emergency room and directed that Sergeant Rayner be placed in the regular medical ward, not the intensive care unit. Later that afternoon, Sergeant Rayner went into prolonged seizures, and his physician called Mrs. Rayner and told her that his condition had not changed and that he was taking her husband to the University of Louisville Hospital. The physician indicated that Rayner would probably be there for three days and that she did not need to accompany him. Upon his arrival at the University Hospital, Sergeant Rayner was treated in the emergency room and transferred to the intensive care unit. He died there in the early hours of the morning on October 7, 1982, due to intercerebral bleeding and cardiopulmonary arrest occasioned by the bleeding.
 
 
 4
 Sergeant Rayner's widow and children, the plaintiffs, brought this action for wrongful death against the United States pursuant to the FTCA. They alleged that the Army doctors could have prevented Sergeant Rayner's death through proper monitoring, diagnosis and treatment of his reaction to the isotonic metrizamide used during the myelogram procedure.
 
 
 5
 The district court granted summary judgment for the government because the alleged injury arose incident to military service and, thus, according to Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny, was not actionable under the FTCA.[2] The plaintiffs appeal. They contend that the Feres doctrine is based principally on the potential negative "effects of the maintenance of [FTCA] suits on discipline, and the extreme results that might obtain if [such] suits ... were allowed for negligent orders given or negligent acts committed in the course of military duty," United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), and seek to distinguish their case from the usual Feres situation because Sergeant Rayner volunteered to undergo the myelogram, as opposed to being ordered by a superior to submit to the procedure. A suit, based on a serviceman's own election to receive medical attention, plaintiffs maintain, impacts neither the military discipline structure nor the chain of command relationship and, accordingly, is not foreclosed by the Feres doctrine. We disagree.
 
 
 6
 In the Feres case, the Supreme Court concluded that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."[3] 340 U.S. at 146, 71 S.Ct. at 159. Sergeant Rayner's case presents the typical Feres factual paradigm, "an FTCA suit for injuries or death allegedly caused by the negligence of a serviceman or an employee of the armed forces." Johnson v. United States, 749 F.2d 1530, 1537 (11th Cir.1985) (rehearing en banc granted). In this situation, the district court need only decide whether the injury arose out of or during the course of an activity incident to service in the Armed Forces. Id. See also United States v. Brown, 348 U.S. 110, 113, 75 S.Ct. 141, 144, 99 L.Ed. 139 (1954).
 
 
 7
 The provision of benefits to soldiers because of their status as military personnel is considered "activity incident to [such] service." Brown v. United States, 739 F.2d 362, 368 (8th Cir.1984); Johnson v. United States, 704 F.2d 1431, 1438 (9th Cir.1983). Military medical care constitutes such benefits; accordingly, suits by servicemen or their representatives for medical malpractice are barred by the Feres doctrine. See, e.g., Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); Jones v. United States, 729 F.2d 326, 328 (5th Cir.1984); Joseph v. United States, 505 F.2d 525 (7th Cir.1974); Harten v. Coons, 502 F.2d 1363, 1365 (10th Cir.1974), cert. denied, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); Peluso v. United States, 474 F.2d 605 (3d Cir.), cert. denied, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973). In Shults v. United States, 421 F.2d 170, 171-72 (5th Cir.1969), we affirmed the district court's dismissal of a sailor's medical malpractice suit against the government, stating in part:
 
 
 8
 it is obvious that the injured man could not have been admitted, and would not have been admitted, to the Naval Hospital except for his military status. He was there treated by Naval medical personnel solely because of that status. It inescapably follows that whatever happened to him in that hospital and during the course of treatment had to be "in the course of activity incident to service."
 
 
 9
 The result, here, is not altered by the fact that Sergeant Rayner chose to undergo the particular course of treatment, the myelogram, rather than being ordered to do so. Elective medical procedures, like elective surgery, are "incident to service" for purposes of the Feres doctrine. Alexander v. United States, 500 F.2d 1, 4 (8th Cir.1974), cert. denied, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); Lowe v. United States, 440 F.2d 452, 453 (5th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971). The judgment of the district court is, accordingly,
 
 
 10
 AFFIRMED.
 
 
 
 *
 Honorable Edward Dumbauld, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 A myelogram is a visualization or photograph of the spinal cord after injection of a radio-opaque substance into the spinal arachnoid space
 
 
 [2]
 We note that "since a defense based on the Feres doctrine is premised on the notion that there is no jurisdiction to hear the claim as the United States has not waived sovereign immunity for that kind of suit, such [a defense] should be raised by a motion to dismiss for lack of subject matter jurisdiction." Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1157 (5th Cir.1981); see also Johnson v. United States, 749 F.2d 1530, 1532 n. 2 (11th Cir.1985) (rehearing en banc granted). It follows that a court which accepts the Feres doctrine defense should label its dispositive order as a dismissal for lack of jurisdiction, as opposed to a summary judgment, which connotes a decision on the merits. Id
 
 
 [3]
 Johnson v. United States, 749 F.2d 1530 (11th Cir.1985) (rehearing en banc granted), provides a comprehensive summary of the evolution of the Feres doctrine