**Frieda Joyce JOHNSON, personal representative of the Estate of Horton Winfield Johnson, for herself and for the Benefit of Kevin Lee Nix, Cynthia Ann Johnson and Tamara Joyce Nix, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 83–5764.**

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Jan. 13, 1986.

Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Joel D. Eaton, Miami, Fla., for plaintiffs-appellants.

Jeffrey D. Fisher, Sp. Asst. U.S. Atty., Linda Collins-Hertz, Jonathan Goodman, Asst. U.S. Attys., Miami, Fla., Robert S. Greenspan, Nicholas Stephen Zeppos, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

---

**5.** Alabama Puerto Rico Barge Lines, Inc.

Before GODBOLD, Chief Judge, RO-NEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Frieda Joyce Johnson, respondent, brought this wrongful death action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680. She alleges that her husband, a helicopter pilot for the United States Coast Guard dispatched to search for a civilian boat, died as a result of the negligence of civilian Federal Aviation Administration air traffic controllers who had assumed control over the helicopter when inclement weather prevented visual navigation. The district court, relying on *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), granted the government's motion to dismiss. The court of appeals reversed. 749 F.2d 1530 (11th Cir.1985). On April 24, 1985, we granted the government's suggestion that this matter be reviewed by the *en banc* court. 760 F.2d 244 (11th Cir.1985). Such action vacated the panel opinion. Upon consideration by the full court, the panel opinion found at 749 F.2d 1530 (11th Cir.1985) is reinstated.

As noted in footnote 13 of the panel opinion, the Supreme Court granted certiorari in the case of *Shearer v. United States,* 723 F.2d 1102 (3rd Cir.1983), *cert. granted,* —— U.S. ——, 105 S.Ct. 321, 83 L.Ed.2d 259 (1984). On June 27, 1985, the Court announced its opinion in that case, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). The opinion of the Supreme Court is most helpful to our decision herein and reinforces the analysis set forth in the panel opinion.

*Shearer* involved the death of an Army private, who, while off duty, was kidnapped and murdered by another serviceman who was also off duty and away from his base. The claim made under the Federal Tort Claims Act was that although the Army knew that the other serviceman was dangerous it negligently failed to control him or warn others about him. The government contended that the suit was barred by both 28 U.S.C. § 2680(h) (waiver of sovereign immunity under the Federal Tort Claims Act not applicable to claims arising out of assault and battery) and the *Feres* doctrine. Only four members of the Court found § 2680(h) applicable. Section II B of the opinion, which discussed the *Feres* doctrine, was joined in by eight members of the Court (Justice Powell did not participate in the case).[1] Special emphasis is placed upon military discipline and whether or not the claim being considered would

---

1. Section II B reads:

Our holding in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), was that a soldier may not recover under the Federal Tort Claims Act for injuries which "arise out of or are in the course of activity incident to service." *Id.,* at 146, 71 S.Ct. at 159. Although the Court in *Feres* based its decision on several grounds, "[i]n the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.'" *United States v. Muniz,* 374 U.S. 150, 162 [83 S.Ct. 1850, 1857, 10 L.Ed.2d 805] (1963), quoting *United States v. Brown,* 348 U.S. 110, 112 [75 S.Ct. 141, 143, 99 L.Ed. 139] (1954).

The *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases. Here, the Court of Appeals placed great weight on the fact that Private Shearer was off duty and away from the base when he was murdered. But the situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military decisions, see *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977), and whether the suit might impair essential military discipline, see *Chappell v. Wallace,* 462 U.S. 296, 300, 304, 103 S.Ct. 2362, 2365, 2367, 76 L.Ed.2d 586 (1983).

Respondent's complaint strikes at the core of these concerns [footnote omitted]. In particular, respondent alleges that Private Shearer's superiors in the Army "negligently and carelessly failed to exert a reasonably sufficient control over Andrew Heard, ... failed to warn other persons that he was at large, [and] negligently and carelessly failed to ... remove Andrew Heard from active military duty." App. 14.

require civilian courts to second-guess military decisions. In *Shearer,* the Court concluded that the "[r]espondents complaint strikes at the core of these concerns" and held the claims barred by the *Feres* doctrine. — U.S. at —, 105 S.Ct. at 3043 (footnote omitted).

Writing for the majority, the Chief Justice noted,

"[t]he *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases."

*Id.* Following this command, we find that the panel opinion has given proper consideration to the *Feres* factors with particular attention to whether or not the claims asserted here will implicate civilian courts in conflicts involving the military structure or military decisions. The claims presented are based solely upon the conduct of civilian employees of the Federal Aviation Administration (a civilian administration within the Department of Transportation) who were not in any way involved in military activities. The fact that the decedent was a helicopter pilot for the United States Coast Guard is not sufficient, standing alone, to activate the *Feres* preclusion.

The judgment of the district court is REVERSED.

JOHNSON, Circuit Judge, dissenting in which RONEY, TJOFLAT and HILL, Circuit Judges, join.

I respectfully dissent from the decision of this Court.

This case concerns a Coast Guard helicopter pilot who was killed while on a military mission in a crash allegedly caused by civilian FAA air controller negligence. Since the suit brought by this serviceman's survivor is against the United States, we are bound by the dictates of the *Feres* doctrine, which exempts the government from suit where an injury to a serviceman is "incident to service." Here, Johnson's injury was undoubtedly sustained incident to service, so under current law our decision ought to be a relatively straightforward affirmance. However, the majority finds a novel way to evade the commands of the Supreme Court—and of Fifth Circuit precedent binding on this Court—in order to reverse and allow recovery.

In the panel opinion reinstated by the full court after *en banc* consideration, the majority determines that this Court hence-

---

This allegation goes directly to the "management" of the military; it calls into question basic choices about the discipline, supervision, and control of a serviceman [footnote omitted].

Respondent's case is therefore quite different from *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), where the Court allowed recovery under the Tort Claims Act for injuries caused by a negligent driver of a military truck. Unlike the negligence alleged in the operation of a vehicle, the claim here would require Army officers "to testify in court as to each other's decisions and actions." *Stencel Aero Engineering Corp. v. United States, supra,* 431 U.S. at 673, 97 S.Ct. at 2058. To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct. But as we noted in *Chappell v. Wallace,* such "complex, subtle, and professional decisions as to the composition,

training, ... and control of a military force are essentially professional military judgments.'" 462 U.S., at 302, 103 S.Ct. at 2366 quoting *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973).

Finally, respondent does not escape the *Feres* net by focusing only on this case with a claim of negligence, and by characterizing her claim as a challenge to a "straightforward personnel decision." Tr. of Oral Arg. 37. By whatever name it is called, it is a decision of command. The plaintiffs in *Feres* and *Stencel Aero Engineering* did not contest the wisdom of broad military policy; nevertheless, the Court held that their claims did not fall within the Tort Claims Act because they were the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness. Similarly, respondent's attempt to hale Army officials into court to account for their supervision and discipline of Private Heard must fail. — U.S. at —, 105 S.Ct. at 3043–44.

forth will not make the standard *Feres* inquiry—whether or not the injury was incident to service—unless something that it calls "the *Feres* factual paradigm" is present. *Johnson v. United States*, 749 F.2d 1530, 1537 (11th Cir.1985). That paradigm is said to be "an FTCA suit for injuries or death allegedly caused by the negligence of a serviceman or an employee of the armed forces." *Id.* Where the paradigm does not appear, this Court must now undertake a case-by-case assessment of each rationale behind the *Feres* doctrine to determine whether the suit in question would undercut the purposes of the FTCA. *Id.*

The majority appears to find grounds for this extraordinary methodology in a handful of cases in which courts have returned to the *Feres* rationales to examine novel situations. *See Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (black servicemen barred from suing military for damages for constitutional violations); *Stencel Aero Engineering v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) (no third party indemnification from United States where direct suit of injured party barred by *Feres*); *United States v. Munitz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (*Feres* does not bar prisoners' suits against United States for injuries sustained in federeal prison); *Hunt v. United States*, 636 F.2d 580 (D.C.Cir.1980) (manufacturer sued by servicemen injured by defective swine flu vaccine not barred by *Feres* from bringing in United States as substitute defendant under unique liability scheme of Swine Flu Act). The majority's own opinion suggests that it is undesirable to apply these rationales case-by-case in any but extremely unusual

situations. *Johnson*, 749 F.2d at 1537 ("the [*Feres*] rationales are more relevant to the wisdom of implying [sic] an exception to the FTCA in the first instance, than they are to determining whether, given a particular factual situation, a serviceman was injured 'incident to service' "). *Compare Henninger v. United States*, 473 F.2d 814 (9th Cir.1973) ("[t]o determine the effect that a particular type of suit might have upon military discipline would be an exceedingly complex task.... [N]early every case would have to be litigated, and it is the suit, not the recovery, that would be disruptive of discipline and the orderly conduct of military affairs").[1]

However, cases in which a serviceman was injured incident to service by a civilian government employee are hardly novel. This fact pattern has appeared consistently over the years. And just as consistently, no court until now has allowed recovery against the government in this sort of suit. *See Potts v. United States*, 723 F.2d 20 (6th Cir.1983), *cert. denied*, 466 U.S. 959, 104 S.Ct. 2172, 80 L.Ed.2d 555 (1984) (Navy corpsman injured when struck by broken cable from hoist operated by civilians); *Warner v. United States*, 720 F.2d 837 (5th Cir.1983) (off-duty Army enlisted man injured on base when motorcycle collided with shuttle bus driven by civilian government employee); *Jaffee v. United States*, 663 F.2d 1226 (3d Cir.1981) (*en banc*), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982) (serviceman injured by radiation exposure allegedly due in part to intentional tort of civilian Department of Defense and Atomic Energy Commission employees); *Lewis v. United States*, 663 F.2d 889 (9th Cir.1981) (Marine Corps pilot

1. The Supreme Court in *Shearer v. United States*, — U.S. ——, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985), recently said, as the majority notes, that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in the light of the statute as it has been construed in *Feres* and subsequent cases." The majority seems to read this comment as condoning case-by-case application of the *Feres*

rationales. This is too broad an interpretation. The bright-line rule that the *Shearer* Court specifically rejects is the use of "the situs of the murder" as determinative. Beyond this, the Court simply affirms that each case should be examined in light of the traditional application of the exception—*not* that each case should be scrutinized under each *Feres* rationale originally supporting the FTCA exception.

killed in crash allegedly due to negligence of government maintenance employees); *Carter v. Cheyenne*, 649 F.2d 827 (10th Cir.1981) (Air Force captain killed in crash at city airport for which city brought third-party claim against FAA controllers); *Woodside v. United States*, 606 F.2d 134 (6th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980) (Air Force officer killed in crash of plane allegedly due to negligence of civilian flight instructor employed by military flight club); *Uptegrove v. United States*, 600 F.2d 1248 (9th Cir.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980) (serviceman killed in crash of Air Force transport due to alleged negligence of FAA air traffic controllers); *Watkins v. United States*, 462 F.Supp. 980, *aff'd on opinion below*, 587 F.2d 279 (5th Cir.1979) (serviceman killed on base when motorcycle collided with shuttle bus driven by civilian government employee); *Hass v. United States*, 518 F.2d 1138 (4th Cir.1975) (Marine sued government, charging civilian managers of Marine stable with negligence); *Certain Underwriters at Lloyd's v. United States*, 511 F.2d 159 (5th Cir.1975) (suit by insuror of serviceman injured through malpractice of Public Health Service employees barred); *Bankston v. United States*, 480 F.2d 495 (5th Cir.1973) (serviceman injured through Public Health Service employee malpractice); *United States v. Lee*, 400 F.2d 558 (9th Cir.1968) (serviceman killed in crash of military aircraft allegedly due to FAA air controller negligence); *Sheppard v. United States*, 369 F.2d 272 (3d Cir.1966), *cert. denied*, 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 230 (1967) (serviceman killed in crash of military aircraft allegedly due to FAA air controller negligence) (companion case to *Lee, supra*); *Layne v. United States*, 295 F.2d 433 (7th Cir.1961), *cert. denied*, 368 U.S. 990, 82 S.Ct. 605, 7 L.Ed.2d 527 (1962) (National Guardsman killed on training flight due to negligence of civilian air controllers); *United Air Lines v. Wiener*, 335 F.2d 379 (9th Cir.1964), *cert. denied sub nom. United*

*Airlines, Inc. v. United States*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964) (serviceman injured in part due to CAA employee negligence).

These cases are consistent with the Supreme Court's opinion in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), in which a serviceman was injured in an auto collision with a civilian employee of the Army. The civilian status of the tortfeasor was apparently immaterial to the Court's decision—the only question analyzed was whether the injury was "incident to service." *See also Hass*, 518 F.2d at 1141–42 n. 4 ("[i]n *Brooks* the Army truck that hit claimants' car was driven by a civilian, but the Supreme Court simply mentioned that fact in passing and placed no emphasis on it in reaching a decision").

The former Fifth Circuit cases cited above, *Watkins, Certain Underwriters,* and *Bankston,* are precedents binding on this Circuit. The majority unaccountably does not trouble to distinguish, or even to discuss, these cases. *Watkins,* which involved a suit by a serviceman injured when his motorcycle collided with a shuttle bus driven by a civilian government employee, is particularly relevant. There, the former Fifth Circuit concluded that "the fact that the injury was inflicted by non-military personnel does not bar operation of the *Feres* doctrine." *Watkins,* 462 F.Supp. at 985. What was true for Watkins is no less true for Johnson.

But even if this court simply ignores precedent—even if we decline, as the *Shearer* Court enjoins us, to examine each case in the light of the statute as it has historically been construed and accept the majority's unprecedented case-by-case methodology—the decision of the court below should be affirmed. For this case clearly would fall within the so-called "*Feres* factual paradigm" if the latter were properly framed.

In the cases considered by the *Feres* Court all three plaintiffs were injured by

other servicemen. But the Court's holding was not limited to military tortfeasors. The Court said: "We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or *the Government he is serving.*" *Feres v. United States,* 340 U.S. 135, 141, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950) (emphasis added). The Court further confirmed in *Stencel Aero Engineering Corp.,* 431 U.S. at 669, 97 S.Ct. at 2056 (emphasis added), that "[i]n *Feres* … the Court held that an on-duty serviceman who is injured due to the negligence of *Government officials* may not recover against the United States under the Federal Tort Claims Act." As the lower court in *Sheppard* noted, the Court's ruling in *Feres* contains "no reference, except as a mere statement of fact, to the military status of the primary tort feasors, and certainly no reliance on that fact." *Sheppard v. United States,* 294 F.Supp. 7, 8 (E.D.Pa.1969), *aff'd,* 369 F.2d 272 (3d Cir.1966), *cert. denied,* 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 230 (1967).

An exception to the FTCA must logically cover *all* government employees, since that Act concerns claims based on "the negligent or wrongful act or omission of *any employee of the Government.*" Tort Claims Act, 28 U.S.C.A. § 1346(b) (1976) (emphasis added). As the Ninth Circuit said in *United States v. Lee,* 400 F.2d at 562:

> In the ordinary Tort Claim case, where a person with civilian status is injured or dies, the claimant has his rights under the Tort Claims Act, regardless of the civilian or military status of the individual tortfeasor. An agent of the government has committed the wrong and the government is held liable. There is no logical distinction between the status of the civilian or the military tortfeasor.

In short, the true *Feres* factual paradigm is a case in which injury to a serviceman is caused by *any* government employee. This suit falls squarely within that paradigm. The proper inquiry remaining to this Court is simply whether or not this serviceman's injury was incident to service. Since Johnson was killed in the course of duty on a regular Coast Guard mission, I conclude that his death was indeed incident to service.

Accordingly, I dissent.