**Larry PIERCE, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

No. 86–8339.

United States Court of Appeals, Eleventh Circuit.

March 27, 1987.

Billy N. Jones, Hinesville, Ga., for plaintiff-appellant.

G.R. Smith, Asst. U.S. Atty., Savannah, Ga., Hinton R. Pierce, Brent O. Hatch, U.S. Attys., U.S. Dept. of Justice, Associate Atty. Gen. Office; Civil Div., Washington, D.C., for defendant-appellee.

Before HILL and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

**PER CURIAM:**

The issue in this case is whether the federal courts have subject matter jurisdiction of personal injury claims filed by servicemen under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680.

Appellant, Larry Pierce, a former serviceman, filed a personal injury action against the United States government. His claim arose from a motor vehicle collision between him and another serviceman; the collision did not occur on a military base. The District Court for the Southern District of Georgia dismissed the action ruling that the claim arose in the course of activities incident to Pierce's service and was thus barred by *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Because we conclude that Pierce's injuries were not incurred from activities incident to service, and since the maintenance of the action in this case will not threaten the military disciplinary structure, we reverse and remand for further proceedings.

## BACKGROUND

Larry Pierce, a former Staff Sergeant of the United States Army, served his country in the armed forces for over twelve years. In August of 1982, Pierce was transferred to Fort Stewart, Georgia. On August 24, the day he was assigned to active duty, Pierce requested and received permission from his Master Sergeant to leave the military base and take care of some personal business. Pierce was told that he did not have to return until late afternoon.

Shortly before noon, Pierce left the base on his motorcycle and traveled south to the nearby city of Hinesville, Georgia. After attending to his personal errands, he ate lunch and began his journey back to the base. Pierce's intentions were to return to his room at the barracks and unpack his personal belongings.

At approximately 12:30 p.m., Pierce drove his motorcycle north on General Screven Road—a public highway which traverses the Fort Stewart Military Reserva-

tion. As he approached the intersection of General Screven Road and the south driveway of the Son Bon Plaza (a shopping center within the city limits of Hinesville), a vehicle driven by Roland Peterson, a navy recruiter, exited the Son Bon Plaza in front of Pierce, causing a collision. Peterson, driving an automobile owned by the United States, intended to turn left and proceed south on General Screven Road. He was cited for failure to yield the right-of-way.

As a result of the collision, Pierce received injuries to his right elbow, wrist, and ankle. These injuries left him with a disability rating of seventy percent. Because of this degree of physical impairment, Pierce was declared unfit for active duty and was relieved from assignment on January 19, 1983.

Pierce filed an administrative claim on March 7, 1984; it was denied on May 10, 1984. Thereafter, this suit was filed under the Federal Tort Claims Act seeking damages for injuries allegedly caused by Peterson's negligent operation of a United States vehicle while acting within the scope of his official duties as a member of the United States Navy.

The United States filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) on September 27, 1985. After considering the pleadings, briefs, and the applicable law, the court concluded that Pierce's claim fell within the exception to government liability judicially created by the Supreme Court in *Feres.* The district court granted the motion to dismiss on April 22, 1986.

## DISCUSSION

### I. The *Feres* Doctrine

Under the common law, the doctrine of sovereign immunity barred suits against the United States. *See Feres,* 340 U.S. at 139, 71 S.Ct. at 156; *Johnson v. United States,* 749 F.2d 1530, 1532 (11th Cir.1985), *reinstating panel opinion* 779 F.2d 1492 (11th Cir.1986) (en banc), *cert. granted,* ——

U.S. ——, 107 S.Ct. 59, 93 L.Ed.2d 19 (1986). In an effort to "provide remedies for wrongful government actions through a waiver of sovereign immunity and to relieve Congress of the burden and the public of the inequities of private bills ...," Congress enacted the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b); 2671–2680. *Parker v. United States,* 611 F.2d 1007, 1009 (5th Cir.), *reh'g denied,* 615 F.2d 919 (5th Cir. 1980).[1] This act allows civil actions against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1976). If liability is imposed, the United States must compensate "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 (1976).

The Federal Tort Claims Act is not, however, a blanket waiver of sovereign immunity. *See Parker,* 611 F.2d at 1009. The Act contains several limitations, one of which preserves sovereign immunity if the claim arises "out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). Although the text of the Act does not specifically exclude actions by servicemen arising from peacetime activities, the Supreme Court has created an exception for injuries arising from activity "incident to" military service. *See Johnson,* 749 F.2d at 1532; *Feres,* 340 U.S. at 146, 71 S.Ct. at 159; *see United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Stencel Aero Engineering Corp. v.*

---

**1.** The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

In *Feres,* the Supreme Court resolved a conflict among the Federal Courts of Appeals by considering the claims of three servicemen seeking to recover under the Federal Tort Claims Act for injuries sustained while on active duty. *Feres,* 340 U.S. at 136–37, 71 S.Ct. at 154–55. The Court noted that the reason for the Act was to allow parties aggrieved by agents of the federal government to redress "wrongs which could have been actionable if inflicted by an individual or corporation," but not to expose the United States to "novel and unprecedented liabilities." [2] *Feres,* 340 U.S. at 139, 142, 71 S.Ct. at 156, 157. Finding no theory of private liability "even remotely analogous" to negligence actions brought by soldiers against their superior officers, the Court concluded that "in the absence of express congressional command," Congress did not intend to waive immunity for service-connected injuries and make a "radical departure from established law." *Feres,* 340 U.S. at 141, 146, 71 S.Ct. at 157, 159. In the absence of an express waiver of immunity, "a district court has no jurisdiction to entertain a suit against the United States." *Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1156 (5th Cir. Unit B 1981).[3]

The Court has acknowledged several rationales justifying the *Feres* "incident to service" exception, including: (1) the "distinctively federal" relationship between the government and the members of the armed forces, (2) the substitute for tort liability provided by the Veterans Benefits Act, and (3)

[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty....

*Stencel,* 431 U.S. at 671–72, 97 S.Ct. at 2058 (quoting *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 135 (1954)). As the Court has recently reiterated, however, "[i]n the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, [and] the effects of the maintenance of such suits on discipline....' " *Shearer,* 105 S.Ct. at 3043; *Chappell,* 462 U.S. at 299, 103 S.Ct. at 2365. Thus, in order to determine whether the *Feres* doctrine is applicable, a court must pay "particular attention to whether or not the claims asserted ... will implicate civilian courts in conflicts involving the military structure or military decisions." *Johnson,* 779 F.2d at 1494; *See Shearer,* 105 S.Ct. at 3043; *see also Stencel,* 431 U.S. at 672, 97 S.Ct. at 2058.

II.  Incident to Service

■ Despite the fact that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules" and that "each case must be examined in light of the [Federal Tort Claims Act] as it has been construed," *Shearer,* 105 S.Ct. at 3043, this circuit has adopted a three-part test for determining whether the activity of a serviceman is "incident to service." *Parker,* 611 F.2d at 1013–15. *See Flowers v. United States,* 764 F.2d 759, 760–61 (11th Cir.1985); *Johnson,* 749 F.2d at 1537.[4] The factors to

---

**2.** The Supreme Court has retreated somewhat from its original position regarding the absence of congressional intent to impose "novel and unprecedented liabilities." *See Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Rayonier Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). In *Rayonier,* the Court stated:

It may be that it is 'novel and unprecedented' to hold the United States accountable for the negligence of its firefighters, but the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to

establish novel and unprecedented governmental liability.

*Rayonier,* 352 U.S. at 319, 77 S.Ct. at 377.

**3.** Subsequent history: *Stanley v. United States,* 786 F.2d 1490 (11th Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 642, 93 L.Ed.2d 699 (1986).

**4.** Since *Flowers* was decided only three days after the Supreme Court handed down its decision in *Shearer* and before the Eleventh Circuit reinstated *Johnson* (en banc), *Flowers* is of questionable precedential value. *See Shearer,* 105 S.Ct. at 3039; *Johnson,* 779 F.2d at 1492; *Flowers,* 764 F.2d at 759.

be considered include (1) the duty status of the service member, (2) the place where the injury occurred, and (3) the activity the serviceman was engaged in at the time of the injury. *Parker*, 611 F.2d at 1013. After evaluating the relative weight of these factors, a court should determine whether an activity is incident to service based on the totality of the circumstances. *Parker*, 611 F.2d at 1013.

### A. *Duty Status*

■ The United States stresses the fact that Pierce was a member of the armed forces assigned to "active duty" the day of the accident and therefore, subject to recall. Reviewing courts, however, have refused to treat that fact as dispositive of the duty status issue. *See Parker*, 611 F.2d at 1014 n. 10. A serviceman on furlough may bring an action under the Federal Tort Claims Act. *See Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). Nevertheless, a serviceman on furlough is also subject to recall. *Parker*, 611 F.2d at 1014 n. 10.

Here, the salient facts are that Pierce requested and obtained permission from his supervising officer to leave the base during regular duty hours to conduct some personal business. It is conceded that he was technically neither on furlough nor on leave; nevertheless, Pierce received more than a "mere release from the day's duties."[5] *Parker*, 611 F.2d at 1014. When a serviceman requests and receives authorization to leave the base and exercise the right to be absent from regular duty, the serviceman attains a status much akin to being on furlough. *Parker*, 611 F.2d at 1014. Just as a serviceman on furlough may bring an action under the Federal Tort Claims Act, a soldier exercising his rights

under a pass may maintain an action. *See Brooks*, 337 U.S. at 49, 69 S.Ct. at 918; *Parker*, 611 F.2d at 1015. Because Pierce received a "discretionary time off privilege granted by [his] supervising officer," he arguably left the base on a "pass." *See Parker*, 611 F.2d at 1013 n. 9, 1014.

### B. *The Place of Injury*

Although subject matter jurisdiction of actions under the Federal Tort Claims Act has never turned on whether the alleged harm occurred on or off the military reservation, the situs of the injury is an important factor in determining whether the activity is "incident to service." *Parker*, 611 F.2d at 1014. As stated by the court in *Parker*, "[i]f the injury occurs on the base, it is more likely that the injured service member was engaged in activity incident to service." *Parker*, 611 F.2d at 1014. In this case, the motor vehicle collision occurred on a public highway within the city limits of Hinesville.[6] As the court in *Parker* observed, "[w]hen soldiers are returning to the base, but have not yet reached the premises line when the collision occurs, [Federal Tort Claims Act] actions are permitted." *Parker*, 611 F.2d at 1014 (citations omitted).

### C. *Activity of the Serviceman*

In this case, Pierce was driving a civilian vehicle off the base in a highly congested area. He had eaten lunch at a fast food restaurant, visited a pawn shop, and was returning to the base to unpack his personal belongings. The government alleges that these activities are proximately related to military duties because they are part of the life of a soldier. We disagree.

Pierce, similar to the claimant in *Parker*, "was not directly subject to military con-

**5.** In *Parker,* the court stated that a " '[f]urlough' or 'leave' is generally for a longer period and is charged against the soldier's record. A 'pass' is a discretionary time off privilege granted by the supervising officer and not charged against the record. In either case, the service member can be recalled to work." *Parker,* 611 F.2d at 1013 n. 9.

**6.** Because the accident in this case occurred approximately 500 feet from the boundary of

the military reservation, the government argues that considering the situs of the injury would be inequitable. We recognize that the place of injury is often a matter of fortuity. Nevertheless, this fact should affect only the weight placed on the situs when determining whether the activity was "incident to service"—not whether the place of injury is a controlling factor.

trol; he was not under the compulsion of military orders; he was not performing any military mission." *Parker,* 611 F.2d at 1014. We do not view pawning a camera, eating lunch, operating a motor vehicle, or unpacking personal property when relieved of assigned tasks as activity materially related to military service.

As the court in *Parker* acknowledged, "[i]n some cosmic sense 'all human events depend upon what has already transpired.'" *Parker,* 611 F.2d at 1011 (quoting *Brooks,* 337 U.S. at 52, 69 S.Ct. at 920). Servicemen have to live somewhere. The mere fact that he was stationed at Fort Stewart does not mean that everything Pierce did in connection with his personal life can legitimately be considered activity proximately related to military service. To accept the government's contention would be to construe any conceivable personal activity as "incident to service" because that activity happened to be performed by a member of the armed forces. We refuse to accept such a construction, for to do so would preclude the class of servicemen from bringing an action under the Federal Tort Claims Act merely by virtue of the fact that the claimants are wearing a United States uniform.

Based upon the totality of the circumstances, we conclude that the district court erred in ruling that Pierce's injuries were incurred from activities "incident to service." Pierce was on pass, the accident occurred off the base, and the activities involved were not proximately related to military service. Thus, the district court erroneously concluded that it was without subject matter jurisdiction to entertain Pierce's claims.

### III. The Impact of Litigation on the Military Disciplinary Structure

■ In addition to the "incident to service" analysis, we find additional justification for reversing the order of the district court because Pierce's claim poses no threat to the military disciplinary structure. *See Shearer,* 105 S.Ct. at 3043–44. As indicated, the "single most important and defensible, rationale for the *Feres* doc-

trine" is the potential adverse impact on military discipline and supervision if suits involving "negligent orders given or negligent acts committed in the course of military duty" were allowed. *Johnson,* 749 F.2d at 1533 (quoting *Brown,* 348 U.S. at 112, 75 S.Ct. at 143). Here, the alleged negligence is not of the sort that would harm the disciplinary system if litigated. As the Supreme Court has indicated, "the negligence alleged in the operation of a vehicle ... [would not] require Army Officers 'to testify in court as to each other's decisions and actions.'" *Shearer,* 105 S.Ct. at 3044 (quoting *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059). The claims alleged would not involve "second-guessing military orders," *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059, as the evidence offered to establish the alleged negligence would not call into question the "management" of the military, *Shearer,* 105 S.Ct. at 3043, challenge "basic choices about the discipline, supervision, and control of the serviceman," *Shearer,* 105 S.Ct. at 3043, implicate any "professional military judgments," *Chappell,* 462 U.S. at 302, 103 S.Ct. at 2366, or cast doubt upon any "decision of command." *Shearer,* 105 S.Ct. at 3044. Thus, the litigation would not "upset, via the civilian forum, the delicate relationships which must exist for the military system to properly function." *Johnson,* 749 F.2d at 1539.

### CONCLUSION

Because Pierce's alleged claims did not arise in the course of activities "incident to service" and because resolution of these claims will not threaten the military disciplinary structure, we reverse the ruling of the district court. This case should be governed by *Brooks,* and not by *Feres.* Pierce's claims would clearly be actionable if he had been a civilian at the time of the accident. The government cannot avoid responsibility for tortious conduct merely by relying on the fact that at the time of the accident, Pierce was a member of the armed forces.

REVERSED AND REMANDED.

HILL, Circuit Judge, dissenting:

As this court has previously stated, "[r]egardless of the 'widespread, almost universal criticism of *Feres* by the lower federal courts and commentators,' ... it nonetheless 'is beyond question that it is the law.'" *Johnson v. United States*, 749 F.2d 1530, 1535 (11th Cir.1985) (citations omitted), *reinstating panel opinion*, 779 F.2d 1492 (11th Cir.1986) (en banc), *cert. granted*, —— U.S. ——, 107 S.Ct. 59, 93 L.Ed.2d 19 (1986). The panel majority holds, however, based upon its interpretation of the three-factor analysis in *Parker v. United States*, 611 F.2d 1007, 1013–15 (5th Cir.1980), that *Feres* should not apply in this case because the appellant serviceman's injuries were not incurred from activities "incident to service." Because I believe the *Feres* doctrine should apply to bar appellant's Federal Tort Claims Act (FTCA) suit, I respectfully dissent.

The first factor in the *Parker* analysis is a consideration of the serviceman's duty status at the time of his injury. Duty status is, in my view, the most meaningful element of the *Parker* test. In analyzing the *Parker* factors, the new Fifth Circuit has reached a similar conclusion:

> While no single factor is necessarily dispositive, our applications of the *Parker* test—and, indeed, the results of our cases decided before *Parker*'s exposition of it—demonstrate that the duty status of the service member is usually considered the most indicative of the nature of the nexus between him and the government at the time of injury and is therefore the most important factor.

*Adams v. United States*, 728 F.2d 736, 739 (5th Cir.1984); *see also Warner v. United States*, 720 F.2d 837, 838 (5th Cir.1983) (nature of serviceman's duty status at time of injury is primary factor).

In the present case, the majority concludes by analogy to the facts of *Parker* that although Pierce was technically neither on furlough nor on leave, he nevertheless received more than a "mere release from the days duties." *Parker*, 611 F.2d at 1014 (footnote omitted). But in my view, that is exactly what Pierce received, and nothing more. The serviceman in *Parker* had received the right to be absent from his regular duties for four days and five nights at the time he was injured; therefore the court properly held that his status was more akin to being on furlough. 611 F.2d at 1013–14. Pierce, however, had only received permission to be absent from his regular duties for the afternoon. This scenario appears to fit exactly the characterization of a "mere release from the day's duties," which the *Parker* court implied would warrant the application of *Feres*. *See Parker*, 611 F.2d at 1013–14.

The other two factors are not sufficiently compelling to override the fact that at the time of the accident appellant was on active duty and had merely been released for the day. Although the collision in this case occurred off the military reservation, the *Parker* court noted that "rote application of a 'baseline' rule ... is illogical and abrogates the responsibility to look at all the circumstances to see if the activity was 'incident to service.'" 611 F.2d at 1014. In fact numerous cases have applied *Feres* to bar recovery under the FTCA even though the injuries occurred while the serviceman was off the military base. *E.g.*, *Woodside v. United States*, 606 F.2d 134 (6th Cir.1979) (serviceman killed while receiving instruction toward commercial pilot's license at aero club affiliated with base), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *Stansberry v. Middendorf*, 567 F.2d 617 (4th Cir.1978) (serviceman injured while being transported to hospital in Navy ambulance); *Callaway v. Garber*, 289 F.2d 171 (9th Cir.1961) (serviceman killed in automobile accident while riding in a private car to special military training school). These cases, although not directly analogous to the facts here, indicate that *Feres* is not inapplicable merely because Pierce's injuries occurred off base.

As for the activity appellant was engaged in at the time he was injured, we must keep in mind that "incident to service" does not mean that a strict "but for" test applies. *Parker*, 611 F.2d at 1014. Neither the Supreme Court nor this circuit

has ever imposed a requirement that the serviceman must be engaged in a distinctly military activity at the time of his injury before the *Feres* doctrine will apply. *Feres* itself involved the claim of a serviceman who was killed while sleeping in the barracks. 340 U.S. at 137, 71 S.Ct. at 155. On several occasions this court has invoked the *Feres* doctrine to bar the claims of military personnel injured while engaging in purely personal errands or business. *See Flowers v. United States,* 764 F.2d 759 (11th Cir. 1985) (serviceman injured while driving civilian automobile home from personal errand to grocery store during off-duty hours); *Mason v. United States,* 568 F.2d 1135 (5th Cir.1978) (active duty serviceman who had been relieved from duties for the day injured while tending to personal business on his way home); *Zoula v. United States,* 217 F.2d 81 (5th Cir.1954) (serviceman injured while engaging in personal business in preparation for weekend pass); *Watkins v. United States,* 462 F.Supp. 980 (S.D.Ga.1977) (serviceman fatally injured in collision with post bus while engaging in undisclosed personal business), *aff'd,* 587 F.2d 279 (5th Cir.1979); *cf. Parker,* 611 F.2d at 1014 ("Parker was not even attending to personal affairs, such as shopping, or engaging in other activities arising from life on the base...."). Thus, the nature of Pierce's activity at the time of his injury, although personal, does not preclude the application of the *Feres* doctrine.

As an additional justification for its decision, the majority states that appellant's claim poses no threat to the military disciplinary structure. Regardless of whether the majority is correct in this assertion, our precedent counsels that impact on the military disciplinary structure is not a proper factor to be considered in this type of case. The present case involves what this circuit has termed "the typical *Feres* factual paradigm—an FTCA suit for injuries or death allegedly caused by the negligence of a serviceman or an employee of the armed forces." *Johnson,* 749 F.2d at 1537 (citations omitted). When the *Feres* factual paradigm is present, as in this case, "the issue is whether the injury arose out of or during the course of an activity incident to

service," *id.,* not whether "the allowance of the suit would implicate any of the *Feres* doctrine rationales...." *Id.*

Admittedly, most cases involving the *Feres* doctrine cannot be neatly compartmentalized; thus we must analyze the facts of each case individually according to the *Parker* test. At the time of his injury, Pierce was on active duty status and had received merely a release from his duties for the day. The other two *Parker* factors do not weigh sufficiently in appellant's favor to override his active duty status. Therefore, I would hold that the *Feres* doctrine applies in this case to bar Pierce's FTCA suit.