**Donald RINELLI, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 85 CV 3339 (ERK).**

United States District Court, E.D. New York.

Oct. 14, 1988.

Pegalis & Wachsman, P.C. by Steven E. Pegalis, Great Neck, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Martin E. Coffey, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Plaintiff, Donald Rinelli, has brought this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Sections 1346(b), 2671–2680, for injuries sustained due to negligent medical treatment he received while in the care of the Veterans Administration Hospital in Northport, New York. The United States has moved pursuant to Fed.R.Civ.P. Rule 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction. Specifically, it contends that plaintiff's action alleging medical malpractice is barred under *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

### Facts

In February, 1981 plaintiff, Donald J. Rinelli, injured the neck of the femoral bone of his right leg while undergoing basic training in the United States Marine Corps. Plaintiff was first treated for this injury at the United States Naval Hospital in Beaufort, South Carolina ("Beaufort Naval Hospital") on February 27, 1981. On March 3, 1981 surgery was performed on plaintiff for the purpose of implanting compression screws and a metal plate ("right hip hardware") on his right hip to aid healing of the fracture. Plaintiff remained at Beaufort Naval Hospital until March 24, 1981 when he was released and discharged to a medical holding company. On March 26, 1981, the Beaufort Naval Hospital issued a Medical Board Report to the Naval Council of Personnel Boards in Arlington, Virginia.

On May 7, 1981, after reviewing the various administrative recommendations that had been made, the Navy Physical Review Council gave plaintiff a 60% disability rating and placed him on the temporary disabled retirement list ("TDRL"). Plaintiff remained there until he was permanently retired effective April 1, 1985.

The events leading up to this lawsuit occurred between the time plaintiff was placed on the TDRL and his permanent retirement. Specifically, after being placed on the TDRL plaintiff returned to the New York area where he remained on the TDRL. On four separate occasions, plaintiff sought and received medical treatment at the Veterans Administration Hospital in Northport, New York. Plaintiff was first admitted to the V.A. Hospital on July 25, 1981 for complaints of increased pain in his right hip. A bone scan and debridement were performed on plaintiff's right hip and he was discharged from the hospital on September 25, 1981. On October 5, 1981, plaintiff was again admitted to the V.A. Hospital for treatment of his right hip. At that time an examining physician noted that when plaintiff was treated previously at the V.A. Hospital there was evidence of right hip infection and pain, and that the plaintiff had been treated with a variety of antibiotic regimens. Coffey Aff., Exhibit L. During plaintiff's stay at the V.A. Hospital, a spica cast was applied to his right hip in addition to debridement of his right hip. Plaintiff was discharged from the V.A. Hospital on December 21, 1981.

Plaintiff was readmitted to the V.A. Hospital on March 8, 1982 for removal of a previously applied spica cast and for reassessment of his condition. Coffey Aff., Exhibit M. During his stay, plaintiff underwent treatment with various antibiotics and was discharged on March 26, 1982. Plaintiff's last admission to the V.A. Hospital was on September 17, 1982. During

this last stay, the right hip hardware was removed, spica casts were changed "as needed", and the patient's wound was drained. Plaintiff was discharged from the V.A. Hospital on November 12, 1982.

On April 11, 1985, plaintiff was notified that he had been found unfit for service due to permanent physical disability and should be retired as such. Plaintiff was diagnosed as having a displaced fracture of the base of the right femoral neck which resulted in a disability rating of eighty (80%) percent. The present action was commenced after plaintiff was transferred to the permanent retired disability list.

Plaintiff alleges that the acts of negligence complained of "occurred during a continuous course of treatment commencing on or about July 5, 1981 and continuing through November, 1982 at the V.A. Hospital in Northport, New York." Plaintiff specifically disclaims my suggestion that he was not properly treated at the Beaufort Naval Hospital:

> It is maintained that the only treatment MR. RINELLI received while in active military duty was proper and timely treatment of the fracture of the right femoral neck. The fracture was reduced properly and hardware was properly inserted to promote healing and union of the fractured areas. The initial fracture and management thereof bear no relationship to the subsequent bone infection which MR. RINELLI developed and which has effectively crippled him. The setting of the fracture and the insertion of the hardware were properly performed and within accepted standards of medical care existing at that time. Indeed, there existed no other acceptable way to treat such a fracture at that time. Infection is a common sequela of any open wound; however, when properly and timely diagnosed and properly and timely treated, such infection does not result in a life threatening or maiming situation. In the instant case, however, the infection was neither properly nor timely diagnosed nor was it properly and timely treated. These failures and these departures, plaintiff alleges, are the proximate cause of the plaintiff's present

injuries. The medical treatment received by MR. RINELLI at the Beaufort Naval Hospital in February and March of 1981 have no connection whatsoever with the failure on the part of the medical personnel of the Northport Veterans Administration Hospital to timely and properly diagnose and treat his infection.

Plaintiff's Memorandum of Law, pp. 13–14.

Accordingly, although the complaint as initially drafted alleged that the period of negligent treatment included the period from February 1981 to July 1981 (the period during which the plaintiff received treatment from Beaufort Naval Hospital and preceding his assignment to the TDRL), the plaintiff's complaint is deemed to be amended to reflect the admission that the only acts complained of are those which occurred between July 5, 1981 and November 2, 1982 while plaintiff was on the temporary disability retirement list and was treated at the V.A. Hospital in Northport, New York.

### ' Discussion

In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held that the United States could not be liable under the Federal Tort Claims Act for injuries to armed forces personnel where those injuries "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. There were actually three cases decided in *Feres* and the significant "common fact underlying the three cases" was "that each claimant *while on active duty and not on furlough,* sustained injury due to negligence of others in the armed forces." 340 U.S. at 138, 71 S.Ct. at 155 (emphasis added). While the Supreme Court has subsequently extended the *Feres* rule to "service-related injuries" caused by government employees who are not members of the armed forces, *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987), it has continued to define "service-related injuries" as those incurred "when a service member is performing activities incident to his federal service." *United States v. Johnson*, 481 U.S.

681, 107 S.Ct. at 2068; *see Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 669, 97 S.Ct. 2054, 2056–57, 52 L.Ed.2d 665 (1977) ("In *Feres* ... the Court held that an *on-duty serviceman* who is injured due to the negligence of Government officials may not recover against the United States under the Federal Tort Claims Act.") (emphasis added); *United States v. Brown*, 348 U.S. 110, 111, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954) ("The *Feres* decision involved three cases, in each of which the injury, for which compensation was sought ... occurred while the serviceman was *on active duty and not on furlough.*") (emphasis added); *Dalehite v. United States*, 346 U.S. 15, 31 n. 25, 73 S.Ct. 956, 965–66 n. 25, 97 L.Ed. 1427 (1953) (characterizing the *Feres* cases as involving "injuries to three members of the Armed Forces *while on active duty.*") (emphasis added).

In applying the *Feres* rule, the Court of Appeals held in *Camassar v. United States*, 531 F.2d 1149 (2d Cir.1976) that:

> As a general rule an injury to a member of the armed forces, on active duty, which occurs at a military base or installation, or which occurs away from such base or installation but while the serviceman is engaged in the performance of an assigned military duty, is an injury 'aris[ing] out of or [is] in the course of activity incident to [military] service', ... for purposes of barring suit under the Federal Tort Claims Act.

Id. at 1151 (citation and footnote omitted) (bracketed material in original). Moreover, the Court of Appeals observed, that "[m]ilitary or naval personnel continue in active duty status even when they are on liberty or on leave which are attributes of active duty, and they remain subject to ultimate military control" Id. n. 2.

The plaintiff here, unlike the plaintiff in the category of cases to which the *Feres* rule applies, was not on active duty. On the contrary plaintiff was on the temporary disabled retirement list. 10 U.S.C. § 1202 et seq. During this period, plaintiff did not receive his regular military pay based upon his enlisted status, but rather received disability retired pay based upon his previous active duty status. *See* 10 U.S.C. § 1202. While plaintiff was required to present himself to selected facilities for periodic physical examinations and was subject to forfeiture of retired pay if he failed to do so, *see* 10 U.S.C. § 1210, the periodic orders he received to report for physical examinations specifically advised him that: "These orders do not constitute return to active duty, and wearing of the Marine Corps uniform is not necessary." Collopy Aff., Ex. D.

Moreover, plaintiff was free to accept civilian employment and reside wherever he wished.[1] Indeed, plaintiff was not ordered to report to the Veteran's Administration Hospital for treatment. Instead, he sought admission on his own, receiving treatment there on the apparently mistaken assumption that he was a "veteran", *see* 38 U.S.C. § 610.

Particularly apposite here is *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), where a discharged veteran was permitted to recover for an injury resulting from negligent treatment at a V.A. Hospital despite the fact that the treatment was for complications arising from an injury sustained while the plaintiff was on active duty in the military service. After observing that the *Feres* case involved actions for injuries suffered by servicemen "on active duty and not on furlough" (Id. at 111), the Supreme Court observed that the *Brown* case was similar to *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), a case that allowed recovery under the Federal Tort Claims Act for injuries suffered by off-duty servicemen. Specifically, the Supreme Court held that:

> The injury for which suit was brought was not incurred while respondent was on active duty or subject to military disci-

---

**1.** Plaintiff's time spent on the TDRL would not have been used to compute his final permanent retirement pay in the event he was taken off the TDRL, returned to active duty and subsequently retired. 10 U.S.C. Section 1332(b)(7).

pline. The injury occurred after his discharge, while he enjoyed a civilian status. The damages resulted from a defective tourniquet applied in a veteran's hospital. Respondent was there, of course, because he had been in the service and because he had received an injury in the service. And the causal relation of the injury to the service was sufficient to bring the claim under the Veterans Act. But, unlike the claims in the *Feres* case this one is not foreign to the broad pattern of liability which the United States undertook by the Tort Claims Act.

*Id.* at 112, 75 S.Ct. at 143.

*Brown* is consistent with the "active duty" qualification of the *Feres* rule and, more significantly, it plainly stands for the proposition that the plaintiff here is not precluded from recovering under the Federal Tort Claims Act simply because he was being treated in a Veterans Hospital for complications arising from injuries sustained while he was on active duty in the armed services.[2] On the contrary, *Brown* and subsequent cases confirm that "[w]hile no single factor is necessarily dispositive ... the duty status of the service member is usually considered the most indicative of the nature of the nexus between him and the government at the time of injury and therefore the most important factor in determining whether he may recover under the Federal Tort Claims Act." *Adams v. United States,* 728 F.2d 736, 739 (5th Cir. 1984); *see LaBash v. United States Department of the Army,* 668 F.2d 1153 (10th Cir.1982).

While the plaintiff here was not discharged from the Marine Corps and at some point could have been returned to active duty status if he was found to be physically fit, he "was not directly subject to military control; he was not under the compulsion of military orders; he was not performing any military mission." *Parker v. United States,* 611 F.2d 1007, 1014 (11th Cir.1980); *see Pierce v. United States,* 813 F.2d 349 (11th Cir.1987). Indeed, plaintiff was for all practical purposes a civilian when he was injured.

Under these circumstances, the three broad rationales underlying the *Feres* rule, which all revolve around the service-related nature of the injury and which the Court of Appeals recently held must be applied in cases such as these, *see Sanchez v. United States,* 839 F.2d 40, 42 (2d Cir.1988), do not preclude recovery. First, the injury for which recovery is sought did not occur while plaintiff was on active duty or subject to military discipline. Second, because plaintiff was not on active duty or subject to military discipline, the fact that he was eligible for compensation under the Veterans Benefits Act does not preclude recovery. *See United States v. Brown, supra* 348 U.S. at 112, 75 S.Ct. at 143; *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *see also United States v. Johnson,* 481 U.S. 681, 107 S.Ct. at 2068 ("[T]he existence of those generous benefits is an independent reason why the *Feres* doctrine bars suit *for service-related injuries.*") (emphasis added). Third, because plaintiff was for all practical purposes a civilian, who was *not* "acting pursuant to standard operating procedures of the [Marine Corps]," when he was victimized by the malpractice of civilian employees of the Veterans Administration, "the potential that this suit could implicate military discipline is [not] substantial." *Id.* 107 S.Ct. at 2069. Indeed, the likelihood of disrupting "military discipline [even] in the broadest sense of the word" is non-existent where, in addition to the facts enumerated above, the lawsuit is commenced after the plaintiff has been permanently separated from the armed forces.[3] *Id.* 107 S.Ct. at 2069.

**2.** *United States v. Brown, supra,* and *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), likewise make clear that eligibility for Veterans Benefits Act payments does not preclude recovery where, as here, the injuries for which recovery is sought are not "service-related" as that term has been defined.

**3.** In *United States v. Johnson, supra,* the Supreme Court held that "military discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country." Accordingly, "[s]uits brought *by service members* against the Government for service-related injuries could undermine the commitment to effective service and thus have

Accordingly, because "[t]he circumstances of this case thus [do not] fall within the heart of the *Feres* doctrine as it has been consistently articulated," *Id.* 107 S.Ct. at 2069,[4] the motion to dismiss the complaint is denied.

SO ORDERED.

the potential to disrupt military discipline in the broadest sense of the word." 481 U.S. 681, 107 S.Ct. at 2069 (emphasis added).

**4.** In *Ricks v. United States,* 842 F.2d 300, 301 (11th Cir.1988), the Court of Appeals held that the *Feres* rule precluded a malpractice action by a person on the temporary disability retired list. The facts in *Ricks v. United States, supra,* are also distinguishable from the present case. There, as in *Anderson v. United States,* 575 F.Supp. 470, 472 (E.D.Mo.1983), upon which the United States Attorney also relies, the plaintiff was injured while "availing himself of military treatment in ... a military medical facility." 842 F.2d at 301. In cases where a plaintiff was temporarily retired from the service when the injury occurred, the only factor that can arguably be said to trigger the applicability of *Feres* rule is the fact that the injury occurred while plaintiff was being treated in a military medical facility. *Cf. Shults v. United States,* 421 F.2d 170 (5th Cir.1969).